EDWARD I. ROBINSON, ADMINISTRATOR, ETC., OF C. L. ROBINSON, DECEASED, AND ELIZABETH S. ROBINSON, APPELLANTS, VS. JAMES HOWE, WILLIAM DIBBLE AND JONATHAN BUNCE, EXECUTORS OF CALVIN B. DIBBLE, DECEASED, APPELLEES.

1. The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of a suit must be made parties either as complainants or defendants, so that a complete decree may be made binding upon all parties.

2. The court can not adjudicate directly upon the rights of necessary and indispensable parties without having them actually or constructively before it, and the failure to raise the objection of the absence of such parties by demurrer or answer is not a waiver of the right to make such objection before final decree, or even on appeal.

Appeal from the Circuit Court for Putnam county.

The facts of the case are stated in the opinion of the court.

*Cooper & Cooper*, for Appellants.

*Silas A. Bradley* and *Fletcher & Wurts*, for Appellee.

MABRY, C. J.:

A statement of the allegations of the original bill filed in this case will be found in the case of Howe vs. Robinson, *et ux.*, 20 Fla. 352. After the case reached the Circuit Court under a mandate from this court, the bill was amended, and new parties were added. necessitated in part by the deaths of Calvin B. Dibble and Calvin L. Robinson. The bill under the last amendment has as complainants James Howe, and William Dibble and Jonathan Bunce, as executors of the estate of Calvin B. Dibble, deceased, and the defendants are Edward I. Robinson, administrator of the estate of Calvin L. Robinson, deceased, Elizabeth S. Robinson, Susan L. Vaught and F. A. Vaught. The statement in the amended bill as to complainants is unusual, but the real complainants, we think, are as stated.

The amended bill alleges that Susan L. and F. A. Vaught, minor heirs of Nathan and Penelope Vaught, deceased, were in February, 1861, the owners of lot six, square fifty-three, according to Hart's map of the city of Jacksonville, said lot being bounded on the north by Monroe street, east by Cedar street, south by lot three and west by lot five in said square; and about the 8th day of said month and year, Ann West, as guardian of said minors, obtained an order from the probate court of Duval county authorizing her as such

guardian to sell said lot at private sale and convey the same to the Florida, Atlantic & Gulf Central Railroad Company, and in pursuance of said authority she did, on the 9th day of February, 1861, sell and convey, by deed duly executed, said lot to said railway company; that said minors became of age, respectively, on the 17th of February, 1875, and the 31st of July, 1877; that on the 12th day of October, 1867, complainant James Howe obtained a judgment against said railroad company for three thousand four hundred and forty-six dollars and sixty-six cents, in the Circuit Court for Duval county, and at the time of the recovery of said judgment said railroad company owned said lot of land in fee, and the same was never embraced in or subject to the lien or mortgage hereafter mentioned, nor was it sold at the sale made thereunder, but was then and continues subject to the lien of said judgment; that James Howe duly assigned said judgment in August, 1877, to Calvin B. Dibble, then living; that on the——day of February, 1868, the Trustees of the Internal Improvement Fund of Florida (for a failure on the part of said railroad company to comply with the provisions of the act entitled an act to provide for and encourage a liberal system of internal improvements in this State, approved January 6th, 1855, relating to the interest on bonds issued by said company under said act and the one *per cent. per annum* as a sinking fund, and which bonds were declared by said act to be a first lien or mortgage upon said railroad, its road-bed, iron, equipment, workshops, depots and franchises) seized and sold said railroad, its road-bed, iron, equipment, workshops, depots and franchises to William E. Jackson and his associates for $111,000, and in June, 1868, executed and delivered to them a deed duly executed, by which they acquired all the right, title and

interest of said railroad company in and to its franchise, road-bed, iron, equipment, workshops and depots and the said corporation, the Florida, Atlantic & Gulf Central Railroad Company, before any execution had issued on the said judgment obtained by James Howe, ceased to exist. That the sum received at the sale by the trustees was not sufficient to pay the amount due on the lien or mortgage bonds issued by said company, and nothing remained of said sum to pay said judgment or any part of it, and the same remains unpaid. That in December, 1868, and after the sale by the trustees, and after said corporation ceased to exist, one Jacob Edrihi obtained a judgment against said railroad company for $573 in the Circuit Court for Duval county, and an execution issued on said judgment on January 2nd, 1869. It is further alleged that Calvin L. Robinson in 1876 or 1877, in his own behalf, or in behalf of his wife, Elizabeth S. Robinson, procured or caused the sheriff of Duval county to levy upon and sell by virtue of the Edrihi execution the said lot six, in square fifty-three, as the property of the said railroad company, and Robinson, for himself or wife, became the purchaser at said sale of said lot, and the sheriff of Duval county pretended to convey the same to Mrs. Robinson by deed in January, 1877. Also that Robinson and wife, one or both of them, claim to hold, possess, own and control the said lot under said pretended conveyance, and complainants were advised that Susan S. and F. A. Vaught have, or claim to have, some interest in said lot. The bill prays that the conveyance to Mrs. Robinson be set aside, and that the lot mentioned be sold to satisfy the lien of the judgment obtained by James Howe against the Florida, Atlantic & Gulf Central Railroad Company, and that the proceeds arising from the sale, or so much thereof

as may be necessary to satisfy said judgment, be paid to the complainants, William Dibble and Jonathan B. Bunce, executors of the estate of Calvin B. Dibble, deceased, who was the assignee of said judgment.

The amended bill was answered by Calvin L. Robinson and wife, and upon the death of the former, his administrator, Edward I. Robinson, was made a party. The defenses set up in the answer of the Robinsons are: First, that the bill as framed is in the name of Howe for the use of Calvin B. Dibble, who had died before the amended bill was filed, and on this account it should be dismissed. Second, it is denied that James Howe ever obtained any judgment, as alleged, in October, 1867, against the Florida, Atlantic & Gulf Central Railroad Company. It is admitted that there appears on the minutes of the Circuit Court for Duval county, under date of October 12th, 1867, what purports to be a judgment in a case entitled on the minutes, "James Howe vs. Fla., A. & G. C. R. R.—Assumpsit," but for various reasons alleged it is claimed that the so-called judgment was illegal, null and void as against any one. Third, fraud is charged against James Howe in obtaining said judgment; and it is alleged that Calvin B. Dibble was not an innocent purchaser of the same without notice. Fourth, the said judgment having been obtained in October, 1867, and the said railroad having been seized and sold, as alleged in the bill about two years after said judgment was rendered, and three years being allowed by the statute (sec. 35, Chapter 1639) after the dissolution of a corporation in which to proceed by *scire facias* to obtain the issuance of an execution, it is alleged that Howe and all persons claiming through or under him as assignees, or representatives of assignees, of said judgment are estopped by their laches from pursuing

a remedy in equity, when he and they have slept over their legal rights, if they ever had any and did not invoke the common law process when it could have been done.   Fifth, if the said judgment is valid as against the said Florida, Atlantic & Gulf Central Railroad Company (which is denied), it is alleged that the lot in question never was the property of said company, and was never subject to the lien, if any existed, of said judgment.   It is admitted that Ann West, as guardian of the minor children of Penelope Vaught, deceased, did apply to the probate judge of Duval county for leave to sell said lot, and obtained an order authorizing her to sell the same at private sale, but for reasons assigned it is claimed that the sale was illegal. Sixth, it is alleged that Elizabeth S. Robinson was the owner of said lot, and that she acquired title at a sale made by a commissioner appointed to sell real estate belonging to the estate of I. D. Hart, deceased; that said sale took place on the 10th day of March, 1875, and Elizabeth S. Robinson received a deed from the commissioners on that date and went into immediate possession of said lot and has remained in peaceable possession of the same and has held the same adversely to all the world up to the time of filing the original bill in this case, it being over seven years of peaceable adverse possession under claim or color of title. Seventh, that in January, 1877, the sheriff of Duval county sold said lot by virtue of the execution issued in the judgment in favor of J. Edrihi against the Florida, Atlantic & Gulf Central Railroad Company, and Mrs. Robinson, who was then in possession of same, under her former purchase, became the purchaser thereof, and obtained a deed thereto from the sheriff; and that by virtue of said sale all title or claim that was or might have been in the said Florida, Atlantic &

Gulf Central Railroad Company to said lot became extinguished and was merged in the better title owned by Mrs. Robinson, although the said railroad company in its life never asserted title to the lot by taking possession of it or exercising acts of ownership over it.

The case originated in Duval county and was transferred to Putnam county on account of the disqualification of the Judge of the Fourth Circuit. After replication filed and testimony taken the court on final hearing decreed in favor of complainants on all the points of defense raised by the defendants. It was adjudged that at the time of the entry of the judgment in favor of James Howe against the Florida, Attantic & Gulf Central Railroad Company, said company was legally seized and possessed of lot six (6) square fifty-three (53), as discribed in the bill of complaint and that the lien of said judgment after its entry attached to said lot. The court further decreed that under and by virtue of the sale and conveyance of the Trustees of the Internal Improvement Fund of the State of Florida to William E. Jackson and his associates only so much of said lot six, square fifty-three was sold and conveyed as was occupied by the said railroad company as its road-bed, and that all of said lot not embraced in and covered by the road-bed of said railroad, should be sold under and by the decree of this court to satisfy the lien of the judgment recovered by James Howe against said railroad company. The case was referred to a special master with directions to take such testimony only, offered by either of the parties to the suit, as would tend to show how much, and what part, if any, of said lot six, square fifty-three, was embraced in and covered by the road-bed of said Florida, Atlantic & Gulf Central Railroad Company, and to report to the court within

80 SUPREME COURT.

Robinson, Admr., v. Howe, Dibble and Bunce, Exs.—Opinion of Court.

a time mentioned. The appeal here is from the above decree.

It will be seen from the foregoing statement of the bill that the complainants do not question the superiority of the lien of the bonds issued by the Florida, Atlantic & Gulf Central Railroad Company, under the Internal Improvement Act, so far as its road-bed, iron, equipment, and workshops were concerned, all of which it is alleged passed to William E. Jackson and associates under the sale by the Trustees of the Internal Improvement Fund. It is alleged that the lot in question was not included in the property of the company covered by the lien of its mortgage bonds issued under the Internal Improvement Act and was not in fact sold by the trustees. There can be no question on the record before us but that the road-bed of the said company was sold by the trustees in 1868, to Jackson and his associates and the testimony shows that from the time the road was constructed in 1855 or 1856 up to the time of the sale of the road by the trustees, the road-bed of said railroad extended over a part of said lot six, square fifty-three. In the decree appealed from the court adjudges that so much of said lot as was occupied by the road-bed of said railroad was embraced in the sale to Jackson, and that the lien of the judgment sought to be enforced extended to the remainder of the lot. The lot, as appears from the testimony, was one hundred and five feet square. The court was unable to ascertain from the testimony what part of the lot was occupied by the road-bed and referred the case to a special master to report testimony on this point.

It seems to the court that there is an absence of necessary parties in this suit, and, as pointed out by counsel for appellants, if the track of the railroad was

partially on the lot in question, and the title of the railroad company passed to Jackson and associates under the first lien in favor of the trustees, complainants, as the holders of a subsequent judgment lien, would have no right to subject said lot or any portion of it to such lien without making Jackson and his associates or their successors in title parties. The record discloses the fact that such parties are directly interested in the subject-matter of the litigation. Judge Story, in his book on Equity Pleadings, sec. 72, says "it is a general rule in equity (subject to certain exceptions, which will hereinafter be noticed) that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all. By this means, the court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity of a multiplicity of suits, and to make it perfectly certain, that no injustice is done, either to the parties before it, or to others, who are interested in the subject-matter, by a decree which might otherwise be grounded upon a partial view only of the real merit. When all the parties are before the court, the whole case may be seen; but it may not where all the conflicting interests are not brought out upon the pleadings by the original parties thereto." Gregory vs. Stetson, 133 U. S. 579; Bailey vs. Inglee, 2 Paige. 278. The failure to raise the objection by demurrer, plea or answer that necessary and indispensable parties are not made to a bill, is not a waiver of the right to make such objection before final hearing or even on appeal. Story, Eq. Pl., sec. 75.

After it had been developed by the testimony in the present case that other parties than those before the court had acquired an interest in the lot sought to be subjected to the lien of the judgment the court should have required them to be made parties to the suit. It is an elemental principle that a court can not adjudicate directly upon the rights of parties without having them actually or constructively before it. In the absence of necessary parties this court can not express any opinion as to the right of complainant to subject the lot in question or any part of it to the judgment mentioned.

The decree is reversed, with leave to add necessary parties and for such other proceedings as may be conformable to law. Ordered accordingly.