# Richmond.

## CLENDENNING v. CONRAD.

### APRIL 25, 1895.

#### Absent, Keith, P.*

1. GUARDIAN AND WARD—*Removal of Effects of Ward Out of State—Ex Parte Application—Notice.*—The *ex parte* application of a foreign guardian, under sections 2629 and 2630 of the Code, for the removal of the effects of his ward out of the State, is a separate and distinct proceeding from a suit by a creditor to administer the assets of the estate of the ward's deceased ancestor. The object of the notice required by the section is to enable parties to be affected by such removal to appear and protect their interests, and, if need be, prevent the removal.

2. CHANCERY PRACTICE—*Amendment or Alteration of Decree During the Term.* Until the court adjourns for the term, no one, unless expressly authorized to do so, can act under a decree or judgment entered at that term, except at his peril. During the term all the proceedings are in the breast of the court, and under its control, and liable to be stricken out, altered or amended during the term, and that without notice to the parties. Parties to the suit are conclusively presumed to have known any modification made at a subsequent day of the term, of a decree entered at a former day.

3. CHANCERY PRACTICE—*Petition by Party or Receiver.*—A party in interest, or a receiver, may file his petition in a suit in which he is such party, or was appointed receiver, in order to bring to the attention of the court facts affecting his interest, and to ask the court to protect such interest.

4. GUARDIAN—*Jurisdiction over Foreign Guardian.*—Although, as a general rule, a guardian cannot be sued as such out of the jurisdiction in which he qualified, yet if a non-resident guardian invokes the aid of a domestic court, he is bound by the decrees made in the proceedings instituted by him, and if found within the jurisdiction of said court, may be proceeded against therein to enforce such decrees.

*Judge Keith decided the case in the court below.

Statement.

5. CHANCERY PRACTICE—*Infants—Parties.*—Infants are necessary parties in a proceeding in which their interests are to be affected, and it is error to pass upon their rights in a proceeding to which they are not parties.

6. HOMESTEAD—*Guardian of Non-Resident Infants—Transferring Effects Out of State—Receiver.*—Where the guardian of non-resident infant children of a deceased father, who was a citizen of this State and to whom a homestead in money had been set apart, asks to transfer said money out of the State, it is proper for the court to appoint a receiver to take charge of the funds and invest them, so that the principal money may be forthcoming when the youngest of such children attains the age of twenty-one years.

Appeal from a decree of the Circuit Court of Fauquier county, pronounced April 7, 1891, in a proceeding on the chancery side of said court wherein the appellant was the petitioner, and the appellee, as guardian of the infant children of B. F. Conrad, was the defendant.

*Reversed.*

In the chancery suit of *Clendenning* v. *Hall and others,* pending in the Circuit Court of Fauquier county, B. F. Conrad, one of the defendants, claimed a homestead exemption of $2,000 in the proceeds of the sale of his property which had been sold under the proceedings had in that cause, and by a decree entered in the cause September 15, 1882, the court adjudged that Conrad was entitled to the homestead, and directed the receiver of the court to pay to " B. F. Conrad's assignee the sum of $2,000 as homestead." Subsequently, B. F. Conrad died, and on December 15, 1882, the cause was revived against his administrator, and a decree entered directing G. B. Gibson, the " bonded commissioner " of the court, to pay to " William H. Payne, attorney for the children of B. F. Conrad, the sum of $2,000, allowed to said Conrad in his lifetime as his homestead."

On April 4, 1883, John D. Conrad filed his petition in said court in the following words and figures, to-wit:

"To the Hon. James Keith, Judge of the Circuit Court of Fauquier county, Virginia:

"Your petitioner, John D. Conrad, a citizen of Jefferson county, West Virginia, shews to your Honor that he was appointed by the County Court of the said county guardian of Mary E., Laura E., Ada L., and Daniel P. Conrad, infant children of B. F. Conrad, who was your petitioner's brother.

"The said B. F. Conrad died in Fauquier county very poor, and ycur petiticner has been compelled to take charge and care of the children, as they were motherless also.

"Your petitioner further shows that the said children are entitled, under your Honor's decree, pronounced in the cause of *Clendenning* v. *Hall*, to the sum of $2,000—the homestead allotted to their father (subject to costs, &c.) Your petitioner also shews that he has qualified as guardian, and executed bond, with good security, more than sufficient to cover the entire estate of the said infants. All of which facts will appear by duly authenticated records herewith filed.

"Notice has been given of the intention to apply to your Honor to transfer the said fund to your petitioner as guardian, at the April term, 1883, of your Honor's court, a copy of which, from the Warrenton *Index*, is herewith filed. The rights of no parties will be affected by the proposed transfer, as the children are without any kindred in Virginia able to assist them, and the fund will be necessary for their clothing, &c.

"All the requirements of the law having been conformed to, your petitioner asks leave to file his petition in the said cause, and piays your Honor to order the transfer of the fund to your petitioner forthwith, as he is here at expense.

"Respectfully submitted,

"JOHN D. CONRAD."

Thereupon the following order was entered, to-wit:

"In the matter of the petition of John D. Conrad, guardian

of Mary E., Laura E., Ada L., and Daniel P. Conrad, infant children of B. F. Conrad, deceased.

"The said John D. Conrad, guardian as aforesaid, this day filed his petition, and this cause came on to be heard on said petition and the accompanying papers.   And it appearing to the satisfaction of the court, by authentic documentary evidence, that the said John D. Conrad has qualified, in Jefferson county, in the State of West Virginia, as guardian of the said infants, and has given, in the court where he qualified, bond with surety sufficient to insure his accountability for the whole of the estate of his said wards, which now is or probably will come into his hands as guardian; and it further appearing to the court that neither the rights of said infants, nor of any other person, will be prejudiced by the transfer of the estate of said wards to their guardian; and it also appearing that notice of the application of the transfer of the said estate has been published as required by law for four weeks in the Warrenton *Index*, a newspaper published in the town of Warrenton, the court doth adjudge, order and decree that W. H. Payne, the attorney into whose hands the said fund was paid by order made in the cause of *Clendenning* v. *Conrad*, now pending in this court, do pay to the said John D. Conrad the said sum of $2,000 (subject to a credit of $28.27) allowed G. B. Gibson, and paid him by said Payne, and such costs and reasonable fees as may have been incurred.   And the sum herein ordered to be paid to said Conrad shall be held and accounted for by him as guardian aforesaid."

On April 6, 1883, W. H. Payne, attorney, filed a report in the *ex parte* proceeding, and an order was made therein, which report and order are in the words and figures following, to-wit:

"*Ex parte* Conrad.

"The undersigned respectfully reports that he has paid to

John D. Conrad, guardian, the sum of $2,000, as ordered by your Honor, and herewith exhibits his receipt.

W. H. PAYNE, Attorney.

"It appearing to the court that W. H. Payne, attorney, has paid to John D. Conrad, as guardian of the children of B. F. Conrad, the sum of $2,000 as ordered, the court doth order that this cause be dropped from the docket."

It appears from the said petition that B. F. Conrad was a resident of the State of Virginia at the time of his death, and it is inferred that his infant children were also residents of Virginia at that time. But at the time the petition for removing the effects was filed they were residents of the State of West Virginia.

The other facts, and the further proceedings had in the cause, sufficiently appear in the opinion of the court.

*Brooke & Scott* and *W. E. Garrett,* for appellant.

*Eppa Hunton, Jr.,* for appellee.

BUCHANAN, J., delivered the opinion of the court.

By a decree rendered in the cause of *Clendenning against Hall* on 15th day of September, 1882, the Circuit Court of Fauquier county set apart the sum of $2,000 as a homestead to B. F. Conrad, which was to be paid out of the proceeds of his property ordered to be sold in that case for the benefit of his creditors. The sale was made, but before the homestead fund was paid over to him he departed this life, leaving four infant children. At the December term, 1882, of the court, a decree was entered directing the receiver of the court in that case to pay that fund over to the attorney of the infant children of the homestead claimant. Pursuant to this decree, the $2,000 set apart was paid to the attorney. At the April

term of the court, 1883, John D. Conrad filed his petition in
the same court, showing that he had qualified as the guardian
of the said infant children in the County Court of Jefferson
county, in the State of West Virginia, and asked the court
to authorize him to remove the $2,000 to West Virginia, where
he and his wards resided, as provided in sections 2629 to 2633
of the Code. The court, being satisfied that all the provisions
of the Code had been complied with, at the same term of the
court entered a decree directing the attorney of the infants to
pay the $2,000 to their guardian, less costs, for removal, as
prayed for. The attorney paid the money to the guardian,
and reported the fact to the court on the 6th of that month,
and on the same day his report was confirmed, and the case
for the removal of the fund stricken from the docket. On
the 13th of that month, and during that term of the court,
James H. Clendenning, complainant in the case of *Clenden-
ning against Hall*, mentioned above, filed his petition, in
which he alleged that the infant children of the homestead
claimant were only entitled to the use of the $2,000 until the
youngest attained the age of twenty-one years, and that upon
the happening of that event his creditors had the right to
have that fund distributed among them; and prayed for a
receiver to be appointed to take such steps as might be neces-
sary to secure the *corpus* of the $2,000, so that the same
might be forthcoming when the youngest child attained that
age. The court entered an order in the case in which the
order for the removal of the fund had been made, and ap-
pointed a receiver as prayed for, and directed him to take
such steps by bringing suit in the State of West Virginia, or
in this State, or in such other manner as to him shall seem
proper, in order that the fund may be forthcoming when the
youngest child of B. F. Conrad shall have attained the age of
twenty-one years.

At the December term of the court, in the year 1887, the

receiver filed his petition in the proceedings in which he was appointed, stating that John D. Conrad, the guardian of the infants, had received the $2,000, and transferred it to West Virginia a day or two after the order for its removal was made. He also sets out the proceedings had which resulted in his appointment as receiver to secure the *corpus* of the fund for the benefit of the creditors, and that the order for the removal of the fund and his appointment as receiver were both made at the same term of the court, while the whole matter was in the breast of the court. He further states that John D. Conrad, the guardian, who removed the fund to West Virginia, has returned to Virginia, and is within the jurisdiction of the court, and prays that the said guardian may be compelled to appear and bring that fund into court, and to so invest it that the principal may be forthcoming when the said youngest child, who is a citizen of this State, shall have attained the age of twenty-one years, and for general relief.

To this petition John D. Conrad filed his demurrer and answer at the April term, 1888, of the court.

He assigns as causes of demurrer:

(1) That a guardian qualifying in the State of West Virginia cannot be proceeded against as such in this State.

(2) That the infant children are not made parties to the petition.

(3) That a petition does not lie in such a case, and that an original bill is necessary if there can be any relief at all.

(4) There is no equity in the petition, and no proper case for relief is stated.

In his answer he claims that he qualified as guardian in the State of West Virginia; that he filed his petition for the removal of the $2,000 from this State; that an order was so made, the money removed and the cause ordered to be stricken from the docket; that neither he nor his wards had any notice

to rehear or set aside the final order in that proceeding, or that any further proceedings would be had in the case, and that all proceedings had or orders made therein afterwards were null and void, and that neither he nor his wards can be affected by them. He further states that a creditor's suit was instituted in the Circuit Court of Jefferson county, in the State of West Virginia, by James H. Clendenning against him, his wards, and the administrator of B. F. Conrad, deceased, asserting the rights of the creditors of the said decedent in the $2,000 fund; that such suit was dismissed upon demurrer; and avers that he will file a copy of the proceedings as an exhibit with his answer, but the exhibit was not filed. He admits that he was living in this State, but denies that he is a citizen of Virginia, and says he is going to return to West Virginia, where he qualified as guardian; that his settlements as guardian have been made in the court where he qualified, and the fund in controversy is under its control.

Upon the hearing of the cause, the court dismissed the receiver's petition, and from that decree this appeal was taken by James H. Clendenning.

The creditor's suit of *Clendenning against Hall*, in which the $2,000 was set apart as a homestead, and the *ex parte* proceedings of the guardian for the removal of that fund to West Virginia, are separate and distinct proceedings, and not one proceeding, as counsel for appellant insists.

While the application of the guardian for the removal of the fund in controversy was a summary proceeding, notice of it was required to be published for four weeks in some newspaper, in order that parties to be affected by such removal might appear to protect their interests, and prevent it where such removal would impair their rights, or prejudice their interests. Code, sec. 2631.

Clendenning, the creditor, had the right, therefore, to come into that proceeding and make defense against the re-

moval of the fund. He did not file his petition until after the order for the removal of the fund had been made, but he did file it during that term of the court, and while the whole matter was under the control of the court, and in time to have his interest in the fund fully protected, if the usual and regular course had been followed in the case.

Until the court adjourns for the term, no one, unless expressly authorized to do so, can act under a decree or judgment entered at that term, except at his peril. During the term all the proceedings are in the breast of the court, and under its control, and liable to be stricken out, altered or amended during the term, and 'that without notice to the parties. Freem. Judgm., sec. 69; *Robinson* v. *County Commissioners*, 12 Md. 132-141; *Green* v. *P. W. & Ky. Railroad Co.*, 11 W. Va. 685, 692.

The guardian is conclusively presumed to have known that the decree entered at an early day of the term of the court had been modified by the decree entered at a later day, and should have governed himself accordingly. He had no right to remove the fund until the principal had been so secured that the creditors would get the benefit of it after the youngest of his wards had attained the age of twenty-one years, or until the further order of the court.

Although the proceeding for the removal of the fund was a summary one, the court had the right to take all the necessary steps to ascertain whether it was a proper case for its removal, or if, after it had authorized its removal, facts came to its knowledge which showed that the order for the removal had been improperly made, it was its duty, and it had the power, to direct all proper proceedings to prevent its removal, or to secure the rights of the creditors therein. There does not seem to be any good reason why a party in interest could not come into the case by petition to assert his rights, nor why the receiver of the court could not file a petition in

the cause in which he was appointed, in order to bring to the attention of the court the fact that the foreign guardian, who had improperly removed the fund in controversy, had returned to this State, and to ask the court to compel him to do what he ought to have done before he removed the fund.

Is the contention of the appellee that he cannot be proceeded against in this State, because he qualified as guardian in another State, well founded? He had no right to remove the fund in controversy, except as authorized by the court whose jurisdiction he had invoked. He ought not to have acted under the order authorizing him to remove it until the court had adjourned for the term. But, having done so, he ought to have returned the fund to this State, to be dealt with by the court according to the rights of the parties. He failed and refused to do this. He was within the jurisdiction of the court. The proceeding which he had instituted was still pending. The rights of all the parties interested in the fund could be ascertained and secured in that case. Why should it not be done? It is true, as a general rule, that a guardian cannot be sued as such out of the jurisdiction in which he qualified. His rights and powers, like those of an administrator or executor, are considered as strictly local. Story, Confl. Laws, sec. 499. But in this State, at least, there are exceptions to the general rule.

It was said by President Tucker in *Tunstall* v. *Pollard's Adm'r*, 11 Leigh, 1, 36, that : "Upon a full review of the whole subject, I am of opinion that justice, convenience and necessity require a recognition of the rights to sue an executor who has qualified abroad, if he comes within this jurisdiction, bringing the assets with him. And no authority sustains the contrary proposition." *Rinker* v. *Streit*, 33 Gratt. 666; 1 Minor's Insts., (4th ed.) 476.

In the same case, at page 32, he says: "If it is the duty of every sovereignty to provide for the security of its own people,

it is as much bound to enforce justice in their behalf from an executor who is within its jurisdiction, and has also within it the assets out of which they have a right to payment, as it is to prevent a foreign administrator from recovering and withdrawing the assets which are within its power.'' The same doctrine applies to foreign guardians, and for the same reason. 1 Minor's Inst. (4th ed.) 476; *Rinker* v. *Streit*, 33 Gratt. 666.

The foreign guardian in this case improperly removed the fund from the State, and if he cannot be held responsible for his conduct here, the creditors must either lose their debt or be compelled to seek their remedy in the domicile of the foreign guardian. They ought not to be compelled to leave the State to subject the assets of their debtor to the payment of their debts, when the foreign guardian is within the jurisdiction of the domestic courts, and can be proceeded against in them.

The infant children of B. F. Conrad, deceased, were necessary parties to the petition of the receiver, and the demurrer to it on that ground ought to have been sustained, and leave been given to amend. The court erred in dismissing the petition. It also erred in passing upon the rights of the infants in the $2,000 fund by its decree of April 13, 1883, when they were not before the court.

For these errors, the decree of the April term, 1891, will have to be reversed, the decree of April 13, 1883, be set aside, so far as it declares what the interest of the said children is in the $2,000 fund, and the cause remanded for further proceedings to be had in accordance with this opinion.

REVERSED.