CHARLES LEYVRAZ v. C. C. JOHNSON, *et al.*

154 So. 159.
Division A.
Opinion Filed April 2, 1934.

*J. V. Walton* and *H. A. Henderson,* for Appellant;
*Mickler & Mickler,* for Appellee, *C. C. Johnson,* as Liquidator;

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Appellee, W. V. Knott, State Treasurer.

ELLIS, J.—The second amended bill of complaint was filed in December, 1932. The complainant, Charles Leyvraz, sought by bill in chancery exhibited in the Circuit Court for St. Johns County against C. C. Johnson, as Liquidator of Bankers Trust Company of St. Augustine, and W. V. Knott, as State Treasurer, to obtain an accounting of the bonds, stocks and securities that were in the hands of the State Treasurer on February 3, 4, and 6, 1930, which had been deposited by the Bankers Trust Company as required by the provisions of Section 4188, Revised General Statutes 1920, now Section 6131, Compiled General Laws 1927, and to ascertain what, if any, sales had been made thereof and the proceeds derived therefrom, also to ascertain the amount of the complainant's savings account in the Savings Department of the Bank on those dates, as well as the amount of such deposits on June 19, 1930, also to ascertain the amount of the complainant's commercial checking account upon those dates.

The bill also prayed that the complainant be declared to have a pledgee's lien upon the securities and proceeds thereof which the Bank had deposited with the State Treasurer as required by the provisions of Section 6131 C. G. L., *supra,* subject to whatever prior claims that might exist against such fund under the provisions of the statute mentioned and that an account be taken of the amount of such claims.

There was an alternative prayer that the complainant be declared to have been a special depositor to the amount of both his savings and commercial checking accounts and that on account of the special deposit character of the amount of such accounts he be decreed to have a preferred

claim against the assets of Bankers Trust Company. The bill also contained other appropriate prayers.

The bill in the main rests upon a transaction which as set forth in the bill is copied herein at length. Other material facts are given in substance.

The Banking and Trust Company was incorporated as a banking company and trust company under the laws of Florida and began business in St. Augustine in September, 1926, and continued in business until June 19, 1930, when its affairs were taken over by the Comptroller of the State of Florida as insolvent. That the bank was authorized to maintain a savings account department and receive and accept trust funds on deposit from Trustees as also to conduct a general banking business. That in order to qualify to do business under the requirements of Section 4188 R. G. S. 1920 (Sec. 6131 C. G. L. 1927) it had placed on deposit with the State Treasurer securities consisting of bonds amounting in face value to twenty-five thousand dollars. That while the Bank was engaged in business the complainant was one of its patrons. He had a savings deposit account and the Bank had issued to him a Savings Account Pass Book. That from time to time he made deposits of money to that account. That he also had a commercial checking account with the Bank. That on or about February 3, 1930, he had to his credit in the savings account about thirteen thousand dollars and a "considerable sum of money" in the commercial checking account.

That on the last mentioned date the complainant determined to withdraw from the Bankers Trust Company and take into his own possession all the moneys shown to be due to him in both his savings account and commercial account and pursuant to that determination he went to the place of business of the Bankers Trust Company during its regular banking hours, taking with him his Savings Ac-

count Pass Book, and presented himself to Paul T. Bearer, then President of the Company, and notified him that he, the complainant, "desired to withdraw his said moneys in full from both said accounts."

The transaction as alleged in the bill is set out here in full in the words chosen by the pleader:

"And was prepared to and proceeded in the actual withdrawal thereof, and would have then and there withdrawn his said deposits, except that the said Paul T. Bearer then and there informed your Orator that while he could withdraw, and said Bankers Trust Company would pay him his said, moneys, if he so insisted, that said Bank was a solvent institution and very much desired to retain your Orator as a patron and depositor, and to retain in its savings department his savings account, and to retain in its commercial department his checking account, and that said Bank would secure your Orator's said deposits and accounts with it, as they then, existed, and continue to pay him interest thereon at the rate of 4% per annum, payable quarterly, if he would not then and there withdraw his said deposits and accounts from said bank, further stating to and advising your Orator that said Bank had on deposit with the State Treasurer of the State of Florida bonds, stocks and securities to the value of $25,000.00 (meaning and referring to the stocks, bonds and securities hereinbefore described and referred to), and that there was less than $1,000.00 of trust funds in said Bank, or other obligations, debts or engagements of said Bank for which said deposits with the State Treasurer were primarily or first liable under the law, and that said Bankers Trust Company had a right to, and would secure your Orator's said deposits against loss while they should remain in said Bank, by pledging to, and giving your Orator a first lien on said stocks, bonds and securities of said Bank, on deposit with

the State Treasurer, as aforesaid, subject only to the obligation imposed by law that said stocks, bonds and securities on deposit with the State Treasurer should first be subject to the payment of any judgment or decree which might be rendered against said Bankers Trust Company, and that if your Orator would, in consideration of such security, refrain from withdrawing his said deposits and accounts, and permit the same to remain in said Bank, the Board of Directors of said Bankers Trust Company would promptly meet and ratify and confirm such pledge of said securities to your Orator, and create and give your Orator a lien, on, over and against said securities to protect your Orator against loss, should the Bank thereafter become insolvent or suspend business; that solely because of such assurance and offer of security, and relying thereon, and believing that the same would protect your Orator's said deposits and accounts against loss, your Orator agreed to, and did accept such pledge of said securities, and then and there refrained from withdrawing, and permitted his said deposits and accounts to remain in said Bankers Trust Company; that in furtherance of said agreement and understanding, and to ratify and confirm the pledge of such securities to your Orator for the protection and securing of his deposits and accounts, so long as they remain in said Bankers Trust Company, a meeting of the Board of Directors of said Bankers Trust Company was duly called and held on the next day, to-wit, the 4th day of February, A. D. 1930, at which meeting there were present Paul T. Bearer, L. Orrin Larson and F. H. Rogero, each and duly qualified and acting director of said Bankers Trust Company, and who together constituted a quorum of the Board of Directors in said Bankers Trust Company, and who, being assembled in meeting as the Board of Directors of said Bankers Trust Company, proposed and duly passed

and adopted a resolution of said Board, resolving that your Orator, Charles Leyvraz, a depositor in said Bankers Trust Company, having requested security to protect his deposits in said Bankers Trust Company, be secured by a lien on the bonds deposited by said Bankers Trust Company with the State Treasurer of Florida, under the Trust Act of said State of Florida, subject, however, to any trust funds in the hands of said Bankers Trust Company, and by such resolution said Board of Directors, acting for said Bankers Trust Company, approved, ratified and confirmed the pledging of said securities in the hands of the State Treasurer to the protection of, and as security for your Orator's said deposits and accounts in said Bankers Trust Company, and created a lien on such securities in favor of, and to the benefit of your Orator for the protection of his said deposits and accounts against loss, subject only to any prior lien or claim against said securities arising by operation of law under the provisions of said Section 4188 of the Revised General Statutes of Florida; that to evidence the said agreement between your Orator and said Bankers Trust Company and' the action of the said Paul T. Bearer and of the said Board of Directors of said Bankers Trust Company, the said 'Paul T. Bearer, as President as aforesaid, on the 6th day of February, A. D. 1930, executed in the name of said Bankers Trust Company, and delivered to your Orator, a paper writing, in the words and figures as follows, to-wit:

" 'Feb. 6th, 1930.

" " 'We hereby set aside for the benefit of Charles Leyvraz sufficient Bonds now held by the State Treasurer of the State of Florida, under the Trust Act, to secure his deposits with this bank.

" 'The rate of interest to be paid is to be four per cent. per annum, payable quarterly.

" 'It is the intention of .this article to secure said party against any loss.

" 'BANKERS TRUST COMPANY,

" 'By (Signed) PAUL T. BEARER,

" 'President.' "

It is alleged that the transaction as related constituted a lien upon the funds in the hands of the State Treasurer to secure the special deposit which the complainant made; that the transaction constituted a special deposit by the complainant and by virtue of which he has a preference over general depositors as against the assets of the Bank. It is alleged that the Treasurer has sold the securities and has on hand as proceeds from the sale more than nineteen thousand dollars; that when the Bank closed its doors on June 19, 1930, the complainant had in his Savings Deposit Account $13,598.93 and in his Commercial Checking Account the sum of $667.28, both of which amounts constitute the accounts which were secured against loss by the Bankers Trust Company under its agreement with the complainant.

The bill alleges that the complainant in due course presented his claim to C. C. Johnson as Liquidator as a preferred creditor, but the same was disallowed, the Liquidator stating in a written communication that he would accept the claim as that of a common creditor.

It is alleged that the complainant has received no payment or dividend on his claim; has not waived his claim in any manner; that there has been no judgment against the Bankers·Trust Company or the Liquidator and there was no liability of the Company at the time its doors were closed that would under the provisions of Section 6131 C. G. L., *supra,* take priority over the complainant's claim or particpiate as being of equal dignity with the complainant's

claim against the proceeds of the securities in the custody of the State Treasurer.

Motions to dismiss the bill were interposed by the State Treasurer and the Liquidator. Those motions were granted and the bill was dismissed on March 3, 1932. From that order the complainant appealed.

If the bill contains any equity the motions to dismiss should have been denied. The demurrer of the State Treasurer presents the point that he is an unnecessary party. If he has in his possession securities belonging to the Bank which are chargeable with a lien to secure a creditor of the Bank, the contention that he is not a proper party to a bill which seeks to enforce the lien and obtain an accounting of the proceeds derived from a sale by him of the securities is not well founded.

It is a general rule of equity pleading that all persons who are materially interested in the event of the suit or in the subject matter should be made parties. The reason for the rule lies in the principle of public policy enforced in the courts of equity that a decree should finally and completely determine the rights which all person have in the subject matter decided, so that the parties may safely obey and act upon the decree. See Robinson v. Howe, 35 Fla. 73, 17 South. Rep. 368; Dundee Naval Stores Co. v. McDowell, 65 Fla. 15, 61 South. Rep. 108; Gibson v. Tuttle, 53 Fla. 979, 43 South. Rep. 310.

The complainant seeks an accounting from the Treasurer of funds which he holds in a trust capacity and which the complainant asserts constitute part of a fund from which he has a prior right to all others, or in conjunction with others, to be paid. It is alleged that the securities originally constituting the trust fund have been converted by the Treasurer into money in a sum less than the face value of the securities. If the complainant has a valid claim

upon that fund superior in dignity to other creditors of the Bank he would be entitled to an accounting from the Treasurer as to his degree of faithfulness.

It is one of the peculiar advantages of chancery jurisdiction that the court can bring before it at once all persons having any interest or concern in the subject of the controversy. Clendenning v. Conrad, 91 Va. 410, 21 S. E. Rep. 818; Haughwout v. Murphy, 22 N. J. Eq. 531; Wilson v. Castro, 31 Cal. 420, text 427; Caldwell v. Taggart, 4 Pet. (U. S.) 190, 7 L. Ed. 828.

In the case last cited the Supreme Court of the United States, speaking through Mr. Justice Johnson, said that the rule extends in most cases to "heirs-at-law, trustees and executors." See 15 Ency. Pl. and Prac. 593.

The first question presented is whether it is lawful for a solvent going bank and trust company, organized under the laws of Florida, to secure an individual depositor by pledging assets of the trust department as distiguished from assets of the banking department as security against loss which might be occasioned by the bank's failure. If that question is answered in the affirmative then there is equity in the bill which would have required the overruling of the motions to dismiss it.

The Bankers Trust Company was incorporated as a banking company and as a trust company, so the bill alleges. The powers of a banking company are not the same as the powers of a trust company. The statute makes the distinction very clearly. Compare the special powers of Banking Companies, Secs. 6068, *et seq.,* C. G. L. 1927, and special provisions for Trust Companies, Secs. 6124-6126, *et seq.,* C. G. L. 1927. Certain powers possessed by Trust Companies are forbidden by law to be exercised by any corporation organized or incorporated after the passage of Chapter 6155, Laws of Florida, 1911, but some of the

powers of Trust Companies, such as enumerated in sub-paragraphs 3, 4, 10, 14, 15 and 18 of Section 6126, *supra,* may be exercised by other corporations.

In the instant case the trust department of the Bankers Trust Company, qualifying to carry on the business of a Trust Company, deposited with the State Treasurer certain securities consisting of bonds as required by Section 6131 C. G. L. Those securities are required to be held subject to the payment of any judgment or decree which may be rendered against the Company. The statute makes no distinction between judgments or decrees that may be obtained against the Company in its capacity as Trust Company and in its capacity as Banking Company.

Indeed there is no distinction between the assets of a banking corporation authorized to do the business also of a trust company. What the bank holds in its capacity of trustee is not bank assets. Such properties constitute trust funds and are not within the reach of general creditors of the bank or even preferred creditors of the banking department. The deposit with the Treasurer of an amount in cash or securities equal to twenty-five per cent. of the corporation's capital stock required by Section 6131, C. G. L., *supra,* is for the security of the beneficiaries of the trusts which the bank in its capacity as Trust Company may be executing. The deposit is a mere substitute for an indemnity bond required of those performing a trust or public function for liability arising in the event of breach of faith. Knot v. Morris, 101 Fla. 1299, 134 South. Rep. 615.

In the case above cited Mr. Justice TERRELL, speaking for the Court, said: "When all specific or other trust funds are satisfied and there are no judgments or decrees rendered against the trust company then it would become the duty of the State Treasurer to return such securities to the trust company depositing the same or to its receiver or liquidator."

The phrase "trust company depositing the same" has reference to the corporation. It does not mean that the securities thus returned may not be assets of the corporation to which its general creditors may resort for the payment of their claims under the regulations prescribed by law for the liquidation and settlement of banking corporations.

It follows therefore that in a case where a banking corporation authorized also to do a trust company business has qualified to do such business by making the required deposit of securities with the State Treasurer and has completed its trust business, discharged its trust obligations in all cases and has suffered no judgments or decrees against it in its trust capacity, that the securities on deposit with the Treasurer are assets of the banking corporation to be administered by it in its banking operations and that such assets enter into and become a part of the bank's financial statement and contribute in proportion to their value to the showing of solvency and financial responsibility which such statements may make.

So we hold that the question in its last analysis is whether a banking institution may pledge collateral securities to gaurantee a depositor of private funds against loss of such deposit.

In the case of First American Bank & Trust Co. v. Board of Com'rs of Lake Worth Inlet Dist., 96 Fla. 247, 117 South. Rep. 900, this Court, speaking through Mr. Justice Buford, announced the following doctrine as applicable in this State:

"The authority of a State banking institution to guarantee deposits by pledging collateral security is controlled in many states by statute. In others it is controlled by court decisions based upon what the courts conceive to be a proper public policy. In others, as in this State, the question of

such authority may be said to be controlled by the legislatively established public policy."

While that case involved security given for the deposit of public moneys the doctrine that it is not consistent with public policy for banks to pledge their assets as security to private individuals for deposit of private funds was forecast as the attitude of the Court in this State in what it conceives to be a proper public policy.

The general doctrine that a bank has no power to pledge its assets to secure depositors of private funds has found expression in two recent cases decided by the Supreme Court of the United States. In each case Mr. Justice BRANDEIS prepared the opinion for the Court. See Texas & Pacific Railway Co. v. Pottorff, Receiver, 54. Sup. Ct. 416, 78 L. Ed. 514, and City of Marion v. Sneeden, as Receiver, 54 Sup. Ct. 421, 78 L. Ed. 521, both cases decided February 5, 1934, and may be found in "The United States Law Week of the issue of February 6, 1934.

We have examined the able brief of solicitors for the appellant, but we do not agree with them that paragraph 18 of Section 4185 R. G. S., 1920, Sec. 6126 C. G. L., 1927, expressly authorizes banks which also do a trust business to make contracts for the repayment of deposits and that such power necessarily includes the power and authority to secure the repayment of such deposits by pledging the bank's assets to that end. The paragraph quoted by counsel is as follows:

"POWERS.—Every Trust Company organized under and in pursuance of this Article shall have power * * *.

18. *To receive money on deposit* to be subject to check or *to be repaid in such manner and on such terms,* and with or without interest, *as may be agreed upon by the depositor and the said Trust.Company."*

The statutes of this State expressly authorize the pledging of the bank's assets to secure the deposit of public moneys and by such express authorization of the exercise of such power in view of the generally accepted rule that a bank has no such power, the doctrine of *expressio unius est exclusio alterius* applies.

The general rule that a private debtor may lawfully prefer one creditor over another, as expressed in the case of Johnson v. City Bank & Trust Co., 53 Fla. 265, 44 South. Rep. 516, does not apply in a case where the debtor, a banking institution, is charged with quasi-public duties and obligations and its business is so burdened with a public interest as to require the exercise by the State of its police power to regulate and supervise.

The statute quoted above authorizes the Trust Company to receive money on deposit to be subject to check or to be repaid in such manner and on such terms as may be agreed upon by the depositor and Trust Company. That section relates to the deposit of trust funds to secure which the securities have already been deposited with the State Treasurer, but that Section does not authorize even a trust department of a banking corporation to pledge banking assets to secure the depositor of private funds the repayment of his deposits.

Mr. Leyvraz in this case had a large deposit in the savings department, but the character of that deposit cannot be transmuted into that of a loan to the Bank. His status as the owner of a savings account in the Bank was that of a depositor of private funds in that Bank. Whatever may be the situation in case of a loan to the Bank and the taking from it of securities to secure such loan is not necessary in this case to decide because the bill makes no such case and its language under the motion to dismiss must be taken in that sense most unfavorable to the complainant.

The bill in its last analysis rests the prayer for relief on the theory that the complainant in the transaction fully described in this opinion has by reason of the action of the Bank officials obtained a lien upon the securities deposited by the Bank with the Treasurer of the State. As we have endeavored to point out, those securities in the circumstances were general assets of the Bank which it could not pledge as security for the repayment of deposits of private funds.

In that view of the case the decree of the Chancellor is affirmed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.