JOHN H. BROWN ET AL., APPELLANTS, VS. MARY MARZYCK, APPELLEE.

1. A master's deed executed to a purchaser under a decree of foreclosure, which decree directed the sale of the mortgaged property, and that the master on such sale execute and deliver to the purchaser a deed of conveyance, and that the purchaser be let into possession under such deed. is evidence of title without showing confirmation of the sale.

2. A writ of assistance may be granted to put out of possession of land sold and conveyed under a decree of foreclosure, a person not a party to the suit who has come into possession since the commencement of the foreclosure suit with the consent and connivance of the mortgagor, although he claims possession under a tax title, it appearing also that such claim is made not in good faith but by collusion with the mortgagor for the purpose of keeping the purchaser under the foreclosure sale out of possession.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Appellants.

*M. C. Jordan* and *F. F. L'Engle* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court on the motion:

This is an appeal from an order of the court of chancery granting a writ of assistance to obtain possession property sold and conveyed to appellee under a decree of foreclosure of a mortgage.

Appellee filed her bill to foreclose a mortgage executed by John H. Brown and wife, and a final decree of sale was made in which it was directed that the property be sold; that on such sale the master execute and deliver a deed to the purchaser, and that the purchaser be let into

possession on production of the deed. It appears that Brown had been in possession from 1875 to within a few weeks prior to the 11th of November, 1882, living there with his wife and family. The decree of sale was made 24th of June, 1881, and the sale took place 2d of September, 1882, whereupon the master's deed was executed and delivered to appellee as purchaser.

October 30, 1882, a writ of possession was issued to the sheriff, who made return that Brown and wife were not in possession, but that one Robert E. Lewis was in possession by George A. Lewis, his agent, and the sheriff therefore did not deliver possession to the appellee. Thereupon she filed her petition for a writ of assistance as against Brown and wife and Lewis, claiming that Lewis went into possession subsequent to the commencement of the foreclosure suit in collusion with Brown for the purpose of defrauding and harassing her and keeping her out of possession; that Lewis, who is a relative of Brown or his wife, pretends to have title to the property, but that such pretended claim is a contrivance of Brown to keep possession.

Notice of the application for a writ of assistance was served on Lewis, who appeared, and upon affidavits and exhibits filed, moved to dismiss the petition upon the ground that there had been no confirmation of the sale under the foreclosure proceedings; and upon the further ground that Lewis was the owner and in possession of the premises, and had such possession before the commencement of the foreclosure suit, and is still in possession as the owner by a title independent of Brown and his wife.

The court refused to dismiss the petition, and upon the hearing ordered that a writ issue directing the sheriff to put Brown and Lewis out of possession and to put the petitioner in full possession.

From this order Brown and wife and Lewis have ap-

pealed, and pray a reversal of said order on the grounds, 1, that there had been no confirmation of the master's report of sale under the mortgage foreclosure; and 2, that Lewis was not a party to the foreclosure proceedings and therefore not bound by decree and sale, and that he was the owner in possession by a title independent of Brown and his wife.

As to the first ground, we have already decided at the present term in the case of Petty vs. Mays *et al.*, executors of Jones, that under a decree directing a sale of mortgaged premises, and that the master on such sale execute and deliver to the purchaser a deed of conveyance, and that the purchaser be let into possession under such deed, such deed is evidence of title and of the right of possession without a confirmation of the master's report of sale. We are cited to the English rule that no title is vested in the purchaser until after confirmation of the master's report. But under the English practice a deed was never executed and delivered until such confirmation, and such is the practice in some of the States here. Where, however, the decree directs a deed to be executed to the purchaser on the completion of the sale, as in this case, it is held, we believe uniformly, that the deed alone is evidence of title. (Miller vs. Sherry, 2 Wallace, 237, and other cases cited in Petty vs. Mays *et al.*) Our attention is called to Williamson vs. Berry, 8 How., U. S., 546, cited in Rorer on Judicial Sales, §76, where it is said that a sale under an ordinary decree carries no title until the report of sale is confirmed, but in that very case the court say: " We do not mean to say that such cautionary proceedings upon sales under decrees and orders in chancery may not be dispensed with by a special order of the chancellor to permit them, but that such are the proceedings where no special order has been given."

In this case such special order appears in the decree, di-

recting a deed to be executed to the purchaser and a distribution of the purchase money.

Upon the second ground upon which a reversal is asked, it is necessary to examine the proofs before the chancellor.

The depositions are somewhat voluminous, but a brief statement from them will be sufficient. It appears that Brown and wife have occupied the premises from 1875 down to "a few weeks" before November 11, 1882; that the decree of sale was entered in June, 1881, and the sale was made September 2, 1882.

Brown says he paid a certain claim for repairs on the house "in rent and board" for Lewis and his brother, from which we infer that Lewis boarded with his family.

Geo. A. Lewis swears that he has been in possession for his brother, Robert E. Lewis, "ever since the commencement of said foreclosure suit and at the time of the decree therein, and is still in possession of said property for said Robert E. Lewis."

We do not find any statement that he had such possession *before* the commencement of the suit.

The following exhibits were produced by appellants: A deed to A. Fries, executed by the County Clerk, dated December 10, 1877, for the unpaid taxes of 1875, of the property in question. Also a deed by Fries to Robert E. Lewis, dated February 4, 1878. Also a deed by the City Clerk of Jacksonville to Robert E. Lewis, dated 12th July, 1879, for the city taxes of 1875. Also a deed by the County Clerk to Lewis dated 8th July, 1878, for taxes of 1876, upon certificate of sale issued to Fries and assigned to Lewis.

On the part of the appellee the following exhibits were introduced: Deed of County Clerk to M. C. Jordan dated December 29, 1879, for unpaid taxes of 1877, on certificate of sale to A. Fries, assigned to Jordan; deed by City Clerk to Jordan dated December 29, 1879, for taxes of 1876, on

certificate of sale issued to F. F. L'Engle, assigned to Jordan ; deed by City Clerk to Jordan dated December 29, 1879, for taxes of 1877, on certificate of sale issued to Robert E. Lewis, and by him assigned to Jordan ; deed of sheriff to Jordan dated December 1, 1879, under execution upon a judgment of James K. Robinson against Robert E. Lewis and John H. Brown, rendered in the Circuit Court for Duval county on the first day of September, 1879 ; also a deed by Jordan dated 21st December, 1879, conveying the same property to John H. Brown, duly executed and recorded.

These deeds and others, as appears by the depositions, were obtained for the purpose of removing obstructions in the way of Brown's title, in order to enable him to give the mortgage dated 31st December, 1879, to Mrs. Marzyck which was foreclosed. One of the tax deeds to Jordan, it will be noticed, was executed in pursuance of a city tax sale for the taxes of 1877, on which sale Robert E. Lewis was the purchaser, and the certificate of sale was assigned by Lewis to Jordan, upon which Jordan obtained a deed December 29, 1879.

Whatever interest Lewis had was based upon tax deeds issued upon sales for the non-payment of taxes levied prior to 1877. When, therefore, he assigned to Jordan the certificate of the sale to himself for the taxes of 1877, enabling Jordan to obtain a deed thereon, and to convey the lot to Brown, he was estopped from setting up a claim of title or right of possession under prior tax sales as against Brown's mortgagee.

E. J. Murphy swears that Brown told him " that he intended to beat said Jordan in his efforts to get said property for Mary Marzyck, that he intended when the effort was made to put him, Brown, out, he would put somebody else on the property against whom the writ of possession

would not run, and whom they could not put out under said writ, and that he would keep said Jordan out of said property until next spring, and the said Jordan would have to commence proceedings all over again."

There is in the record an affidavit made by a brother of Robert E. Lewis stating that Robert, at the time of the alleged execution sale under the judgment of Robinson against Lewis and Brown in 1879, was a little under twenty-one years of age; that he was born in January, 1859. Robert himself says nothing on the subject. He was a relative of Brown, Brown "boarded" him, and he seems to have been engaged in dealing in tax titles for Brown's benefit. Whether he was of lawful age at the time of that judgment and execution sale is of little consequence here. He aided Brown and Jordan in the matter of the last tax title, obtaining the tax certificate and assigning it to Jordan in the process of perfecting a tax deed in order that Brown might obtain a clear record title as a basis of his mortgage to Mary Marzyck. Brown employed Jordan to perfect the whole business. Lewis has been of lawful age at least since January, 1880, and does not appear to have taken any steps toward revoking any acts done during his minority.

It does not appear that Lewis had possession before the commencement of the foreclosure suit. It is only shown that he had possession "ever since the suit was commenced," and the legitimate inference from all the circumstances is that he claims possession in the behalf of Brown and for the purpose of causing delay and trouble and not in good faith under an adverse title.

From this state of facts, as they appear in the record, the Chancellor was clearly right in concluding that Robert E. Lewis has no equitable standing in resisting the execution of the decree of sale and the possession of the property un-

der the master's deed. He does not put himself under oath in relation to any fact in the case, but permits his name to be used (if indeed he knows anything about the business) by those who use it to accomplish an unconscionable end. If he has any legal rights in the premises he may enforce them before the proper tribunal, but as the case stands here he seems to have been the instrument of others in a manner not commending itself to favorable consideration.

A proceeding of this character was entertained by the Chancellor in Van Hook vs. Throckmorton, 8 Paige, 33.

The decree appealed from is affirmed.