DUNDEE NAVAL STORES COMPANY, A CORPORATION, *Appellant*, v. M. A. McDOWELL, *Appellee*.

Opinion Filed January 28, 1913.

1.  The rights of persons who have an interest in the subject matter of the litigation, whether legal or equitable, cannot be adjudicated or affected by a decree rendered in a suit to which they were not made parties.

2.  Any one who has an interest in land that is mortgaged, and would be a loser by a foreclosure, is entitled to pay off the

mortgage lien. ·The holder of a duly recorded lease for turpentine purposes may do so.

3.   Where different persons have rights or interests in specific land, the foreclosure of a mortgage upon the land affects the rights and interests of only such persons as are made parties actually or constructively to the foreclosure proceeding.   An owner of the title may be cut off by foreclosure against him, but one having a duly recorded lease upon the land but not made a party to the foreclosure proceeding is not affected thereby.

SHACKLEFORD, C. J., dissents.

Appealed from the Circuit Court for Madison County.

Decree reversed.

STATEMENT, BY SHACKLEFORD, C. J.

On the 1st day of April, 1912, the appellee filed his petition in chancery, which omitting the formal parts thereof and the exhibits referred to therein and made a part thereof, and attached thereto, is as follows:

"The petition of M. A. McDowell, of the County of Madison and State of Florida would respectfully show unto the Hon. Ira J. Carter, Judge of the Circuit Court, 3rd Judicial Circuit in and for Madison County, Florida, that on the 23rd day of June, A. D. 1908, W. B. Jenkins and his wife Emma E. Jenkins, of the County of Madison and State of Florida, made, executed, acknowledged and delivered to one C. L. Leggett their certain note for $500.00 secured by mortgage on the following described property, to-wit: the northeast quarter and the southeast quarter of the northwest quarter and the northwest quarter of the southeast quarter of Section Two; the north-

east quarter of the northeast quarter and the southwest quarter of the northeast quarter of Section four; the east half of the northeast quarter and the northeast quarter of the of the southeast quarter of Section twelve; the northwest quarter of the southwest quarter and the southeast quarter of the southwest quarter of Section fourteen, all in Township one, north of Range six east, and situate, lying and being in the County of Madison and State of Florida; that on the 17th day of March, 1909, the said W. B. Jenkins and his wife Emma E. Jenkins made their certain note to the said C. L. Leggett for the sum of $200.00 secured by a mortgage on the following described real estate, to-wit: the southeast quarter of the northeast quarter Section fourteen, and the northeast quarter of the northeast quarter and the northeast quarter of the northwest quarter of Section thirteen, the northeast quarter of the northeast quarter, and the southwest quarter of the northeast quarter of Section four; the northeast quarter, and the northwest quarter of the southeast quarter, and the southeast quarter of the northwest quarter of Section two; the east half of the east half, the southwest quarter of the southeast quarter, the south half of the southwest quarter, and the northwest quarter of the southwest quarter of Section twelve, the north half of the northeast quarter, and the southwest quarter of the northeast quarter and the northeast quarter of the northwest quarter, northwest quarter of the southwest quarter, and the southeast quarter of the southwest quarter Section fourteen; the southeast quarter of the northwest quarter of Section ten, all in Township one, north Range six east; also the south half of the northeast quarter, the southeast quarter of the northwest quarter, the east half of the southeast quarter, and the southwest quarter of the southeast quar-

ter of Section thirty-four, Township two, north, Range
six east; all of said lands being in the County of Madison
and State of Florida; that said mortgage was duly exe-
cuted, acknowledged and delivered to the said C. L.
Leggett; that the mortgage first above herein referred to
was on the 24th day of June, A. D. 1908, duly filed and
recorded in the public records of Madison County, Flor-
ida, in Book '20,' on page 195, and the other of said mort-
gages was on the 18th day of January, A. D. 1910, duly
filed and recorded in the public records of Madison
County, Florida, in Book '21' on page 480; that subse-
quent to the execution, delivery and recording of said two
mortgages as aforesaid W. B. Jenkins made, executed
and delivered to Boyd & Gibbons a paper purporting to be
a turpentine lease upon the timber upon the following
described lands in Madison County, Florida, to-wit: The
northeast quarter, the northwest quarter of the southeast
quarter and the southeast quarter of the northwest quar-
ter of Section two; the east half of the east half, the
southwest quarter of the southeast quarter, the south half
of the southwest quarter and the northwest quarter of the
southwest quarter of Section twelve; the north half of the
northeast quarter, the southwest quarter of the northwest
quarter, the northeast quarter of the northwest quarter,
northwest quarter of the southwest quarter and southeast
quarter of southwest quarter of Section fourteen, and the
southeast quarter of the northwest quarter of Section
ten, all in Township one north, Range six east, said lease
being dated the 24th day of Sept., A. D. 1910, a certified
copy of same being hereto attached, marked 'Exhibit A,'
and made a part of this petition; that on the 10th day
of August, A. D. 1911, the said Boyd & Gibbons set over,
transferred and assigned all of their right, title and in-
terest in said lease to the Dundee Naval Stores Company,

a corporation, a certified copy of which is hereto attached marked 'Exhibit C' and made a part hereof.

Your petitioner would further show that on the 11th day of November, A. D. 1911, the said C. L. Leggett, filed in the office of the Clerk of the Circuit Court in and for Madison County, Florida, his bill of complaint against the said W. B. Jenkins and his wife Emma E. Jenkins for the foreclosure of said two mortgages, that on the 19th day of January, A. D. 1912, the said court made and entered its final decree in said cause, adjudging that said mortgages be foreclosed, and ordering R. H. Rowe, as Special Master to make sale of the property as set out in said mortgages and said decree, as directed by the court; that on the 12th day of March, A. D. 1912, the said R. H. Rowe as Special Master, pursuant to the terms of said decree, filed his report in said court, wherein he reported the sale of said property pursuant to the terms of said decree to your petitioner for the sum of $1,578.00; that on the said 12th day of March, A. D. 1912, the said court made and entered its decree wherein said report of said Special Master was "in all respects confirmed and approved," all of which proceedings will more fully appear in the files of said cause, reference thereto being prayed.

Your petitioner would further show that on the 13th day of March, A. D. 1912, pursuant to the terms of said decrees, the said Special Master, made, executed and delivered to your petitioner his deed conveying said lands embraced in said mortgages to your petitioner, as will more fully appear from a certified copy of said deed which is hereto attached marked 'Exhibit D,' and made a part of this petition.

Your petitioner would further show that subsequent to the institution of said suit for the foreclosure of said

mortgages, to-wit: November 29th, 1911, the said C. L. Leggett by and through his solicitors of record filed in said cause his notice of lis pendens, which was by the Clerk of said Court duly recorded in the Lis Pendens Docket No. 1, page 57, all of which will fully appear in the files of said cause, reference thereto being prayed; that subsequent to the filing of said notice of the pendency of said suits as aforesaid, the said Dundee Naval Stores Company, entered upon said lands, and by its divers then agents and servants began to box, or cup and work for turpentine purposes the timber on such of said lands as are embraced in both the deed from R. H. Rowe as Special Master to your petitioner and the alleged lease from W. B. Jenkins to said Boyd & Gibbons, and have since continued to work the same for turpentine purposes; that subsequent to the delivery of said deed from R. H. Rowe as Special Master to your petitioner, to-wit: on the ........... day of March, A. D. 1912, your petitioner exhibited his said deed to one E. H. Smith the general manager of said Dundee Naval Stores Company, and demanded possession of the property embraced in his said deed which the said Dundee Naval Stores Company was working for turpentine purposes, and demanded that said Dundee Naval Stores Company cease cultivating the trees thereon for turpentine purposes, but the said Dundee Naval Stores Company refused and still refuses to stop working said timber although they claim the right to work the same under and by virtue of the said lease from the said W. B. Jenkins to the said Boyd & Gibbons; that on the 27th day of March, A. D. 1912, your petitioner delivered to one E. H. Smith, the agent and Treasurer of the Dundee Naval Stores Company, a notice that he would on the first day of April, A. D. 1912, apply to your Honor for an order directing the said

Dundee Naval Stores Company to deliver possession of such of said lands embraced in the deed to your petitioner as aforesaid as are now in the possession of the said Dundee Naval Stores Company, a copy of said notice being hereto attached, marked 'Exhibit E,' and made a part of this petition.

Your petitioner would therefore pray, that your Honor make an order directing the same Dundee Naval Stores Company, to deliver to your petitioner the possession of such lands embraced in the deed from R. H. Rowe, Special Master, to your petitioner, the timber upon which they are now working for turpentine purposes, and your petitioner will ever pray, &c."

The petition was duly sworn to by the appellee and upon the presentation of the same to the Circuit Judge, on the day that the petition was filed, he made an order, directing the appellant to show cause on the 8th day of April, 1912, why the prayer of such petition should not be granted. On such date the appellant interposed a demurrer, wherein he questioned the equities of the petition, which was overruled, and at the same time the. appellant filed the following answer:

"The answer of defendant Dundee Naval Stores Company to the petition of M. A. McDowell exhibited against it. This defendant now and at all times hereafter, saving and reserving to itself all, and all manner of benefit or advantage of exception or otherwise, that can or may be had or taken to the many errors, uncertainties and imperfections of the said petition contained, for answer thereto, or to so much thereof, as this defendant is advised is material or necessary for it to make answer to, answering saith:

1st. That it admits the making and delivery by W. B. Jenkins and wife Emma E. Jenkins of the two mortgages

to C. L. Leggett as mentioned and described in the petition, also the making and delivery by the said Jenkins and wife of the promissory notes for the amounts as stated and set forth in said petition to the said Leggett and also the record of said mortgages as set out and alleged in said petition.

2nd. This defendant admits that the said W. B. Jenkins made and executed the turpentine lease as set forth and described in said petition to Boyd & Gibbons, and admits that Exhibit 'A' to said petition is a true and correct copy of said lease or conveyance; and defendant admits the transfer or assignment of said lease by said Boyd & Gibbons to this defendant as set forth and alleged in said petition, and admits that Exhibit 'C' attached to said petition is a true and correct copy of the said assignment or transfer of said lease, and admit that it is at this time the legal owner and holder of said lease or conveyance and have been since the 10th day of August, A. D. 1911.

3rd. This defendant admits that on the 11th day of November, A. D. 1911, the said C. L. Leggett filed in the Circuit Court of said County of Madison his bill against the said W. B. Jenkins and Emma E. Jenkins, his wife, in which was sought a foreclosure of the two mortgages mentioned and described in said petition, and defendant further admits the making and entering by said court of the final decree in said cause as set out and mentioned in said petition, and also the confirmation or approval by said court of the Special Master's report of sale. But defendant avers that the said final decree so made and rendered by said court or the judge thereof, was not, and has not, since the making or entering of said decree been recorded as required by law on the Minute Book of the Circuit Court of said County of Madison;

and defendant avers that the pretended sale so made under the said decree by the Special Master as set forth and mentioned in said petition, was and is null and void.

4th.   Defendant admits that on the 29th day of November, A. D. 1911, the said C. L. Leggett by and through his solicitors of record filed in the said foreclosure suit, his notice of Lis Pendens, and which was by the Clerk of said Court recorded as set forth and alleged in said petition.

5th.   Further answering defendant says that long prior to the time when the said C. L. Leggett filed his bill for foreclosure of the two aforesaid mortgages so executed to him by the said W. B. Jenkins and wife as set forth and alleged in said petition, the said firm of Boyd & Gibbons were in possession, as they had a right to be, of a large portion of the lands which are described in the lease or conveyance marked Exhibit 'A' attached to said petition; and by and through their agents, servants and laborers were working and using the pine timber or trees growing thereon for turpentine and naval stores purposes, and removing the crude products thereof, and so continued to occupy, use and hold said land and work and use said timber or trees thereon for turpentine purposes up to the time of the making or executing to defendant of the conveyance of which Exhibit 'C' attached to the petition is a true copy; and this defendant ever since the execution and delivery to it of the conveyance of which Exhibit 'C' to the petition is a true copy, has continued to occupy a portion of said lands and work and use a portion of the timber or trees growing thereon for turpentine purposes and which has been so worked and used as aforesaid for turpentine purposes by their predecessors in title the said firm of Boyd & Gibbons, and which was being so worked by said Boyd

& Gibbons at the time of the execution and delivery of the conveyance of which Exhibit 'A' is a true copy.

6th. Further answering defendant says that in the early part of the month of December of the year A. D. 1911, and on divers other dates since that time, it did by and through its servants, laborers and employees, enter upon other portions of said lands and cup, and work for turpentine purposes certain other portions of said timber or trees which had not theretofore been worked or used for turpentine purposes by their predecessors in title the said Boyd & Gibbons, and at this time are so continuing to work and use the same for turpentine purposes, as it has the right to do by virtue of the conveyance of which Exhibit 'A' to the petition is a true copy.

7th. Further answering said petition defendant says that long prior to the 11th day of November, A. D. 1911, the said C. L. Leggett and the petitioner, M. A. McDowell, had notice and knowledge, both actual and constructive, of the execution of the conveyance marked Exhibit 'A,' and also knew of the possession and use of a part of said lands and timber as set forth in paragraph 5th hereof, and knew at the time of the pretended sale of said lands by the said Special Master as set forth in said petition that defendants were in possession of a part of said lands and working and using the timber or trees thereon as aforesaid for turpentine purposes, and that defendant was claiming adversely the right to work and use for turpentine purposes the timber or trees on all of the lands as mentioned and described in the conveyance of which Exhibit 'A' to the petition is a true copy.

8th. Further answering defendant avers that prior and subsequent to the execution and delivery by the said W. B. Jenkins of the conveyance of which Exhibit 'A' is a true copy, the said C. L. Leggett, who was and who at

all times herein has been the legal owner and holder of the two mortgages mentioned in the petition, consented to the making of said conveyance (Exhibit 'A' is copy), and agreed to and with the said Boyd & Gibbons that he, the said C. L. Leggett, as such mortgages, would waive his rights and permit the working or using of the timber or trees on the lands described in said conveyance (Exhibit 'A' being a copy) for turpentine purposes, and thereby induced the said firm of Boyd & Gibbons to purchase same, and assured the said Boyd & Gibbons that in the event of a foreclosure of said two mortgages so held by him (being the mortgages set forth and described in the petition) that he would consent and agree that the rights and privileges and estate so granted under said conveyance, of which Exhibit 'A' is a true copy, should be excluded and released from the lien and operation of said two mortgages.

9th. Further answering, defendant says that both it and the firm of Boyd & Gibbons are necessary parties to the foreclosure proceedings mentioned and recited in the petition, and by reason of the omission to make them parties to said foreclosure suit their rights or interest in the subject matter of said suit are not and were not affected by the decree or any proceedings had therein; and defendant claims the same benefit hereof as if it had interposed the same by demurrer.

Further answering, defendant says that the final decree of foreclosure mentioned in the petition was not prior to the filing of the petition recorded in Minutes of Circuit Court of Madison County, Florida.

And this defendant denies all and all manner of unlawful combination and confederacy wherewith it is charged by the said petition; without this that there is any other matter, cause or thing in the said petition contained, ma-

terial or necessary for this defendant to make answer unto, and not herein and hereby well and sufficiently answered, confessed, traversed and avoided or denied is true, to the knowledge or belief of this defendant; all of which matters and things this defendant is ready and willing to aver, maintain and prove, as this Honorable Court shall direct, and humbly prays to be hence dismissed with its reasonable costs and charges in the behalf most wrongfully sustained."

On the 9th day of April, 1912, the Circuit Judge rendered the following decree:

"The court having heretofore, to-wit: On the 1st day of April, A. D. 1912, made an order that the Dundee Naval Stores Company, a corporation, show cause to this court, at Madison, Florida, on the 8th day of April, A. D. 1912, why it should not make an order directing the said Dundee Naval Stores Company, to deliver to M. A. McDowell the possession of such of the hereinafter described lands, the timber upon which the said Dundee Naval Stores Company, are working for turpentine purposes, and said cause now coming on to be further heard upon the petition of M. A. McDowell, the answer of the Dundee Naval Stores Company and the affidavits filed herein in support of the allegations of the petition, and in denial of certain allegations of said answer, it is, upon consideration thereof, after first hearing argument of counsel for the said M. A. McDowell and said Dundee Naval Stores Company, ordered, adjudged and decreed that the said M. A. McDowell, be let into possession of so much and such parts of the following described lands, the timber nupon which the Dundee Naval Stores company is now working for turpentine purposes, to-wit: The northeast quarter and the northwest quarter of the southeast quarter, and the southeast quarter of the northwest quar-

ter of Section two. The east half of the east half, and the southwest quarter of the southeast quarter, the south half of the southwest quarter, and the northwest quarter of the southwest quarter of Section twelve. The north half of the northeast quarter, and the southwest quarter of the northeast quarter, the northeast quarter of the northwest quarter, the northwest quarter of the southwest quarter and the southeast quarter of the southwest quarter of Section 14. The southeast quarter of the northwest quarter of Section ten. All in Township one, north, six east. The same being in the County of Madison, State of Florida, and that the said Dundee Naval Stores Company, a corporation, be and is hereby directed to surrender possession thereof, and deliver the same to M. A. McDowell.

Done, ordered, adjudged and decreed in Chambers at Madison, Fla., this 9th day of April, A. D. 1912."

From this decree the Dundee Naval Stores Company has entered its appeal.

*T. L. Clarke* and *S. D. Clark* for Appellant;

*Davis* & *Whitnell,* for Appellee.

WHITFIELD, J.—On June 23rd, 1908, W. B. Jenkins and wife executed to C. L. Leggett, a mortgage upon certain real estate to secure a note for $500.00. On March 17, 1909, Jenkins and wife executed to Leggett another mortgage for $200.00. These mortgages were duly recorded. Subsequently, on September 24, 1910, the mortgagor Jenkins duly executed to Boyd and Gibbons and their assigns a lease to a portion of the lands for four years for turpentine purposes, and the lease was duly recorded. The lease was assigned to the appellant Au-

gust 10, 1911.  On November 11, 1911, proceedings to foreclose the two mortgages were begun against Jenkins and wife as sole defendants, and in the foreclosure decree dated January 19, 1912, it is "ordered that the defendants and all persons claiming by, through or under them since the commencement of this suit, be forever barred and foreclosed from all equity of redemption and claim of, in and to said mortgaged property or any part thereof." On March 8, 1912, M. A. McDowell bought the land at the foreclosure sale.  The proceeds of the foreclosure sale discharged the two mortgages and left $457.52 for the defendant mortgagors Jenkins and wife. In December, 1911, after the foreclosure proceedings were begun the appellant, the assignee of the lease began to box and work the trees on the land under the lease.  The Dundee Naval Stores Company, the assignee of the lease, and Boyd & Gibbons, the original lessees, were not made parties to the foreclosure proceedings.  On April 1, 1912, McDowell, the purchaser at the foreclosure sale, applied by petition for a writ of assistance to get possession of the lands from the Dundee Naval Stores Company, the assignee of the original lessees.  Notice was served on the Dundee Naval Stores Company, and it demurred and also answered the petition.  The answer which was sworn to by an officer of the corporation who knew the facts averred that McDowell, the purchaser at the foreclosure sale, had actual and constructive notice and knowledge of the execution of the lease, and at the sale knew the defendant Dundee Naval Stores Company was in possession of and working and using a portion of the land for turpentine purposes, and that defendant Dundee Naval Stores Company was claiming adversely the right to work and use for turpentine purposes the timber or trees on the lands mentioned in the lease.  The answer further

averred that as the original lessees and the assignee of the lease were not made parties to the foreclosure proceedings, the defendant assignee of the lease was and is not affected by the decree or proceedings therein. It was shown by affidavits that the Dundee Naval Stores Company entered upon the land covered by the lease and began to work the trees for turpentine purposes under the lease after the foreclosure proceedings were begun.

The court overruled the demurrer to the petition for a writ of assistance, and on the pleadings and affidavits awarded possession to McDowell, the purchaser at the foreclosure sale, and the Dundee Naval Stores Company, the assignee of the turpentine lease, appealed. The main question presented is whether the Dundee Naval Stores Company, the assignee of the lease, is deprived of its leasehold rights by the foreclosure proceedings to which the lessees and their assignee were not parties.

The rights of persons who have an interest in the subject-matter of the litigation, whether legal or equitable, cannot be adjudicated or affected by a decree rendered in a suit to which they were not made parties. See Robinson v. Howe, 35 Fla. 73, 17 South. Rep. 368; Wiltsie on Mortgage Foreclosure, Secs. 116 and 157; 2 Jones on Mortgages, Sec. 1413; 27 Cyc. 1386.

In the case of McNair & Wade Land Co. v. Parker, decided at the last term, this court said with reference to the rights of the lessee of timber and turpentine privileges on land: "As to the interest conveyed by the deed it is plain that it carriers no permanent fee simple interest in the land itself. It conveys only the timber growing on the land, which is a kind of servitude which may be lost by non-use or abandonment." That an interest in the land was acquired by the lessees was expressly recognized and it was held that such interest may

be lost by non-use or abandonment. Any one who has an interest in the land, and would be a loser by a foreclosure is entitled to redeem. A tenant for years may redeem, 2 Jones on Mortgages Secs. 1055, 1066, 1413; Lockhart v. Ward, 45 Texas 227. The lessees in this case and their assignee would be losers by a foreclosure of the mortgages, therefore it would seem they would have had a right to pay the mortgage lien.

After the execution of the mortgages the mortgagor for a receipted consideration of $700.00 leased by a duly executed conveyance to the lessees and their assigns, "all of the timber upon the . . . . . . . . . . . described, tract of land for the purpose of boxing, working and otherwise using said timber for turpentine purposes." "To have and to hold, box, work and otherwise use said timber for turpentine purposes unto the said parties of the second part, their heirs and assigns, and it is hereby expressly covenanted and agreed that the said parties of the second part may commence boxing, working or otherwise using the said timber for turpentine purposes, or any portion thereof, at any time that the said parties of the second part may desire, and shall have the right to continue to box, work or otherwise use the said timber, and every portion thereof, for the full term of four years, beginning, with reference to such portion of the timber, from the time only that the boxing and working of each portion is commenced." This instrument was duly recorded and certainly conveyed to the lessees and their assigns for a valuable consideration a substantial property right and an interest in a particular portion of the lands that had previously been mortgaged. See Secs. 2448, 2480 Gen. Stats. of 1906; Dowling Park Naval Stores Co. v. Houck, decided last term. The lease has not been surrendered or abandoned, and the purpose of

this litigation is not to require the leaseholder corporation to observe the terms of the lease, but to deprive such lease-holder of its property rights under the lease.

The mortgages being under the statute mere liens upon the lands, the mortgagor still owning the title and being in actual or constructive possession, had a right to lease the lands for turpentine purposes subject to the mortgage liens. As the purchaser's title to the land was acquired only by a foreclosure of the mortgage liens and a sale of the lands thereunder, and as the liens of the mortgages could not affect the turpentine lease except by virtue of the foreclosure proceedings, the lease-holder cannot be deprived of his rights without being given an opportunity to be heard by being made a party to the foreclosure proceedings or otherwise as may be provided by law. The foreclosure sale gave the purchaser a title to the lands, but this does not *per se* destroy the leasehold interest. The leaseholder had a right to possession for the lease purposes as against the mortgagee before the foreclosure, and such right has not been terminated or cut off by adjudication or otherwise. While the lease-holder corporation may be required to observe the rights of the purchaser acquired at the foreclosure sale, yet if such lease-holder is not estopped or has not forfeited or abandoned its property right in the lease, it cannot legally be deprived of such right except by due process of law. Where different persons have rights or interests in specic land, the foreclosure of a mortgage upon the land affects the rights and interests of only such persons as are made parties actually or constructively to the foreclosure proceeding. An owner of the title may be cut off by foreclosure against him, but one having a duly recorded lease upon the land but not made

a party to the foreclosure proceeding is not affected thereby.

The failure to make the lessees or their assignee parties to the foreclosure proceedings may not affect the validity of the decree; and though the purchaser gets a title by virtue of the mortgages, the foreclosure and the sale, which title includes a right of ultimate possession, yet, as the rights of the lease holder have not been adjudicated, the title and right of possession acquired by the purchaser at the same, are subject to the rights of the lease-holder under the duly executed and recorded lease until such rights are in some way duly terminated. The lease-holder is a party to the proceedings on application for a writ of assistance, but it does not appear that the rights under the lease have been terminated or that the lease-holder is not claiming in good faith in its own right acquired by the recorded lease before foreclosure began. See Tiffany on Landlord & Tenant, p. 419. The lease in this case had not been surrendered as in McDermott v. Burke, 16 Cal. 580; nor is it a concealed unrecorded lease as in Strong v. Smith, 68 N. J. Eq. 686, 60 Atl. Rep. 66; 63 Atl. Rep. 493, where the doctrine of estoppel was applicable.

In Batterman v. Albright, 122 N. Y. 484, 25 N. E. Rep. 856, the purchaser of a stock of nursery trees, vines and shrubs at an execution sale had no interest in the lands on which the nursery was growing, and consequently he was not entitled to be made a party to the foreclosure of a mortgage on the land.

As a sale and conveyance under the foreclosure have been made and as the lease-holder is merely defending its rights as against the writ of assistance, it does not appear to be necessary or appropriate that an offer to redeem or to pay the mortgage debt be made.

The foreclosure decree cuts off only those claiming under the mortgage "since the commencement of this suit." The appellant claims under a lease executed and recorded subsequent to the mortgages, but prior to the foreclosure proceedings. The appellant also asserts an equity because if it had been made a party to the foreclosure proceedings it could have protected itself at least to the extent of the surplus paid to the mortgagor, since the lessees had paid the mortgagor for the lease-holder interest and could have claimed recoupment from the surplus paid to the mortgagor, or the lease-holder may have required the land not included in the lease to be first subjected to the payment of the mortgage debt.

The purchaser had constructive notice of the executed and recorded lease before foreclosure proceedings were begun, and had actual notice of the possession and adverse claim of the appellant at the date of the sale.

The decree of foreclosure by its terms or by its legal effect does not deprive the appellant of its lease-hold rights, as it was not a party to the foreclosure proceedings.

The order directing the lease-holder to surrender posssssion to the purchaser at the foreclosure sale before the lease-hold interest is adjudicated or terminated is reversed.

TAYLOR, HOCKER AND COCKRELL, J. J., concur.

SHACKLEFORD, C. J., dissenting.

The first two assignments are not argument, therefore, under our settled practice, must be treated as abandoned. The third assignment is based upon the overruling of the demurrer to the petition. This demurrer was addressed

to the entire petition, directly attacking the same for lack of equity. This being true, it must be considered and treated as a general demurrer even though it may contain special grounds and the petition may be open to attack by special demurrer, though that is not obvious. See Carlton v. Hilliard, decided here at the last term, which follows prior decisions of this court, wherein we held that, where there was any equity in the allegations of a bill, a general demurrer addressed thereto should be over-ruled. City of Orlando v. Equitable Building & Loan Association, 45 Fla. 507, 33 South. Rep. 986, and Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 South. Rep. 599, wherein other decisions will be found collected. This principle is equally applicable to a petition in equity. The only grounds of the demurrer argued before is are those which question the equities of the petition, and the other grounds will be treated as abandoned. We have several times applied this principle on a writ of error to a judgment in an action at law. Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Jacksonville Electric Co. v. Schmetzer, 53 Fla. 370, 43 South. Rep. 85; Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. It applies with equal force to an assignment based upon the overruling of a demurrer in a suit in equity on an appeal. I shall not undertake an analysis of the petition, but content myself with stating that I am clear that it contains sufficient equity to withstand the attack made upon it by the demurrer. I do not think that any argument is necessary to demonstrate the correctness of this conclusion.

This brings me to the consideration of the fourth and last assignment, which is based upon the final decree and is the assignment upon which the appellant chiefly relies for a reversal. It has been ably, earnestly and

ingeniously argued before us by the respective counsel and we have also been favored with excellent briefs. As we held in Knight v. Hodge, 62 Fla. 516, 56 South. Rep. 942, "On an application for a writ of assistance, objections will not be heard to affect the decree determining the rights of the parties." By the use of the word parties here, of course, we mean parties to the litigation and their privies. As is also well settled, the rights of persons who have an interest in the subject-matter of the litigation, whether legal or equitable, cannot be adjudicated or affected by a decree rendered in a suit to which they were not made parties. See Robinson v. Howe, 35 Fla. 73, 17 South. Rep. 368. We further held therein, as we have held in a number of subsequent decisions, "The court cannot adjudicate directly upon the rights of necessary and indispensible parties without having them actually or constructively before it, and the failure to raise the objection of the absence of such parties by demurrer or answer is not a waiver of the right to make such objection before final decree, or even on appeal." See also the discussion and the authorities cited in Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392, and Sarasota Ice, Fish & Power Co. v. Lyle, 53 Fla. 1069, 43 South. Rep. 602. The appellant contends that both it and the firm of Boyd & Gibbons, to whom a turpentine lease of the timber upon the lands in question was executed by W. B. Jenkins, who also executed the two mortgages which were foreclosed, and which lease was assigned by Boyd & Gibbons, to appellant, were necessary parties to such foreclosure proceedings and that, as they were not made parties, they are not bound by the decree rendered therein or their rights precluded, therefore the writ of assistance erroneously issued. If this contention is valid it undoubtedly calls

for a reversal of the decree. In order to determine this question it is necessary to ascertain the nature of the interest in the property which Boyd & Gibbons acquired by the turpentine lease from Jenkins. A certified copy of this lease is attached to the petition. Upon turning to it, I find that it bears date the 24th day of September, 1910, and "grantes, bargains, leases and conveys" unto the lessees named therein, "their heirs and assigns, at the rate of in bulk, all of the timber upon the following described tract of land for the purpose of boxing, working and otherwise using said timber for turpentine purposes." The lease was to run for a period of four years, but we are not concerned with the time provisions. This lease was transferred and assigned by Boyd & Gibbons to the appellant by an instrument bearing date the 10th day of August, 1911. In McNair & Wade Land Co. v. Parker, decided here at the last term, wherein we had to construe an instrument whereby the timber and turpentine privileges on certain described land were conveyed, we said that "As to the interest conveyed by the deed it is plain that it carries no permanent fee simple interest in the land itself. It conveys only the timber growing on the land, which is a kind of servitude which may be lost by non-use or abandonment," and cited in support thereof McNair & Wade Land Co. v. Adams, 54 Fla. 550, 45 South Rep. 492. Even so, this does not fully answer the question which has been propounded to us, though it will prove helpful. It may prove serviceable to look closely at the petition and the answer and get a clear conception of what they disclose as to the situation between the parties litigant. Certain matters are alleged in the petition which are admitted to be true by the answer. So far as such admitted facts throw any light upon the situation which confronts us, they may

be very briefly stated thus. Two mortgages upon the land in question, bearing the respective dates of the 23rd day of June, 1908, and the 17th day of March, 1909, were executed by W. B. Jenkins and wife, the then owners of such land, to C. L. Leggett, which mortgages were duly recorded on the respective dates of the 24th day of June, 1908, and the 18th day of January, 1910. Subsequent to the making and recordation of these mortgages, on the 24th day of September, 1910, Jenkins executed the turpentine lease upon the timber, the salient features of which we have copied above, to Boyd & Gibbons, who assigned and transferred such lease to the appellant on the 10th day of August, 1911. On the 11th day of November, 1911, Leggett filed his bill against Jenkins and wife for the foreclosure of the two mortgages on the 29th day of November, 1911, filed his notice of *lis pendens,* which was duly recorded, and obtained a final decree in such foreclosure suit on the 19th day of January, 1912. While the allegations in the petition as to the sale of the mortgaged land under such decree by the special master, appointed for that purpose, the purchase of the same by the petitioner, who is the appellee here, the confirmation of such sale and the execution of a deed to such land by the special master to the petitioner on the 13th day of March, 1912, are not directly admitted in the answer, they are not denied therein, and they are affirmatively shown and established in the transcript, no contention being made here as to their correctness. One other matter may be advisable to notice. It is averred in the answer that the final decree rendered in such foreclosure suit was not recorded in the minutes of the Circuit Court, as required by law, prior to the filing of the petition. The transcript discloses that after the filing of the petition, on the 5th day of

April, 1912, C. L. Leggett, the complainant in the fore-
closure suit, filed his petition, reciting that the final
decree rendered therein and the order confirming the
sale, by mistake of the clerk, were rcorded in the chan-
cery order book, instead of in the minutes of the court,
and praying for an order directing such clerk to record
such two papers in the minutes of the court as of the
dates of their respective filing, that Jenkins and his wife,
the defendants, filed their written consent to such order,
which was made by the Circuit Judge on the 5th day
of April, 1912, granting the prayer of such petition.
This order formed the basis for the second assignment,
which, as we said above, was abandoned by not being
argued here. I mention this in order to show that I
have not overlooked the principle enunciated in Wilmott
v. Equitable Building & Loan Association, 44 Fla. 815,
33 South. Rep. 447. See also upon this point McGregor
v. Kellum, 50 Fla. 581, 39 South. Rep. 697. It is further
averred in the answer that long prior to the institution
of the foreclosure proceedings the firm of Boyd & Gib-
bons was in possession of a large portion of the lands
described in the lease executed to it by Jenkins and
engaged in working the timber thereon for turpentine
purposes and so continued up to the time said firm as-
signed such lease to the appellant, and that since that
time the appellant "has continued to occupy a portion of
said lands and work and use a portion of the timber
or trees thereon for turpentine purposes." It is still
further averred in the answer that "in the early part
of the month of December of the year A. D. 1911, and
on divers other dates since that time, it did by and
through its servants, laborers and employees enter upon
other portions of said lands and cup, and work for tur-
pentine purposes certain other portions of said timber

or trees which had not theretofore been worked or used for turpentine purposes by their predecessors in title, the said Boyd & Gibbsons, and at this time are so continuing to work and use the same for turpentine purposes." I think that it will be useful and render this opinion the more readily intelligible to copy here in full that paragraph of the answer numbered 7, which is as follows:

"Further answering said petition defendant says that long prior to the 11th day of November, A. D. 1911, the said C. L. Leggett and the petitioner, M. A. McDowell, had notice and knowledge both actual and constructive of the execution of the conveyance marked Exhibit 'A,' and also knew of the possession and use of a part of said lands and timber as set forth in paragraph 5th hereof, and knew at the time of the pretended sale of said lands by the said Special Master as set forth in said petition that defendants were in possession of a part of said lands and working and using the timber or trees thereon as aforesaid for turpentine purposes, and that defendant was claiming adversely the right to work and use for turpentine purposes the timber or trees on all of the lands as mentioned and described in the conveyance of which Exhibit 'A' to the petition is a true copy."

At the hearing, the petitioner produced and filed in support of the allegations in his petition and in denial of certain averments in the answer the affidavits of himself, C. L. Leggett, J. M. Clements, W. B. Jenkins and V. C. McCoy, while the appellant produced no affidavits or other proofs in support of the averments in its answer. The affidavit of the petitioner is as follows:

"Personally appeared before me M. A. McDowel, who being by me first duly sworn deposes and says, that it

is not true as alleged in paragraph 7 of the answer to the petition in the above entitled cause, that he knew of the possession and use of the lands and timber by Boyd & Gibbons as set out in paragraph 5 of said answer, but avers on information and belief that the said Boyd & Gibons never at any time worked any of the timber referred to in the petition for turpentine purposes, that on or about the 1st day of March, A. D. 1912, he was informed by E. H. Smith, the general manager of the Dundee Naval Stores Company, that the said company through its agents, servants and employees, never went upon said lands and boxed or cupped the timber thereon until after the first day of December, A. D. 1911. Sworn to and subscribed before me this 8th day of April, 1912.                     W. A. McDowell.
        Ira J. Carter, Judge."

I also copy the affidavit of C. L. Leggett.

"Personally appeared before me C. L. Leggett, who being by me first duly sworn deposes and says, that he has heard read the answer of the Dundee Naval Stores Company to the petition filed in the above entitled cause, and that it is not true that he consented to the making of 'conveyance' referred to in the 8th paragraph of said answer, a copy of which is filed as Exhibit 'A' to the petition and agreed to and with the said Boyd & Gibbons that he would waive his rights and permit the working and using the timber or trees on the lands therein described for turpentine purposes or that he ever assured the said Boyd & Gibbons that in the event of a foreclosure of his said two mortgages that he would consent and agree that the rights and privileges under said alleged lease should be excluded and released from the lien and operation of said two mortgages; that affiant always insisted to the said Boyd & Gibbons, when he heard that

they were contemplating a lease on said timber from the said Jenkins that he had a mortgage on the same, and that, in effect, they had better be advised of their rights, and that if they had begun to box the same and work said timber for turpentine purposes, to his knowledge, he would have taken steps to have protected his interest. Affiant further says that this affidavit is made for the purpose of being used in the above cause."

J. M. Clements, W. B. Jenkins and V. C. McCoy each states in his affidavit that "he knows it to be a fact that the Dundee Naval Stores Co. entered upon and began boxing or cupping for turpentine purposes the timber on a certain tract of land lying west of Greenville in Madison County, Florida, known as the Jenkins land, sometime between the fifth and the fifteenth of December, 1911. Also that said lands are the same as those recently purchased by M. A. McDowell at public sale in Madison under a foreclosure of mortgage by C. L. Leggett against W. B. Jenkins."

It is not contended that Boyd & Gibbons, the original lessees, were ever in possession of any of the lands after the 24th day of September, 1910, the date on which they transferred and assigned their lease to the appellant, even if it be conceded that prior to such date they had been in such possession and had worked the timber for turpentine purposes, though that matter is contested. It would seem to be established that the appellant entered upon the land and began boxing the timber thereon for turpentine purposes after the first day of December, 1911, probably between the 5th and the 15th days of such month. As we have seen, it is admitted that Leggett filed his bill for foreclosure of the two mortgages on the 11th day of November, 1911, and filed and had recorded his notice of *lis pendens* on the 29th day of Novem-

ber, 1911, which was prior to the date the appellant enter-
ed upon such lands and began using the timber thereon
for turpentine purposes.    This being true, the doctrine
laid down concerning the failure to file the statutory *lis
pendens* notice in a mortgage foreclosure proceeding, to
which the writer of this opinion dissented, and still main-
tains the views he had then, in Cole v. Lee, 57 Fla. 387,
49 South. Rep. 1017, cannot govern by reason of the dif-
ferent state of facts in that case in the instant case.    We
expressly held in the cited case that the    *lis pendens*
statute "does not effect the lien of a duly recorded mort-
gage upon real estate," in which holding the writer hereof
fully concurs.    Boyd & Gibbons had at least construc-
tive notice of the two mortgages and of the liens created
thereby and took their turpentine lease subject thereto,
as the appellant took the assignment of such lease from
such lessees.    By such assignment Boyd & Gibbons had
parted with whatever right or interest they had acquired
by such lease, consequently they were not necessary
parties defendant to the foreclosure proceedings.    Was
the appellant a necessary party?    As we have already
seen, under our holding in McNair & Wade Land Co. v.
Parker, *supra,* Boyd & Gibbons acquired no permanent
fee simple interest in the land itself from their lease,
but only the right to use and work the timber growing
thereon for turpentine purposes for a specified number
of years, which we said was "a kind of servitude which
may be lost by non-use or abandonment."    The appellant
could acquire no greater right or interest from the assign-
ment of the lease to it than the original lessees had.    I
call attention to the fact that the written instruments
referred to and construed in Richbourg v. Rose, 53 Fla.
173, 44 South. Rep. 69, 125 Amer. St. Rep. 1061, 12 Ann.
Cas. 274; McNair & Wade Land Co. v. Adams, 54 Fla.

550, 45 South. Rep. 492; McNair & Wade Land Co. v. Parker, *supra,* not only gave the right to use and work the timber growing on the lands therein described for turpentine purposes, but also sold and conveyed such timber itself. The written instrument referred to in Cawthon v. Stearns Culver Lumber Co., 60 Fla. 313, 53 South. Rep. 738, sold and conveyed the growing timber on the land, while the instruments discussed in Florida Association v. Stevens, 61 Fla. 598, 55 South. Rep. 981; Fletcher v. Moriarty, 62 Fla. 482, 56 South. Rep. 437; Graves v. Harris, 63 Fla. 169, 58 South. Rep. 236; Dowling Park Naval Stores Co. v. Houck, decided here at the last term, simply embraced and gave turpentine privileges, as did the instrument in the instant case now under consideration. Even if all of the written instruments referred to in these cited cases purported "to convey an uncertain interest in and out of land, or for a term of more than two years," as we held in Graves v. Harris, *supra,* so that in order to be valid they would have to comply with the requirements of Section 2448 of the General Statutes of 1906, that would not materially aid us in answering the question. As we held in Florida Association v. Stevens, *supra,* "the right to all the timber upon such lands for turpentine purposes became vested in the grantee immediately upon the execution of such instrument," but it would seem to be true that an actual entry was requisite in order to vest possession in the lessee, and not until after he actually enters can he be said to be in possession of the term for which his lease calls. 1 Taylor's Landlord & Tenant (8th ed.) Sec. 68. As we have seen, it may well be doubted as to whether or not the proofs established the fact of any such entry by Boyd & Gibbons, but, be that as it may, it is clear that the appellant never made such entry until after the first

day of December, 1911, which was not only after the institution of the foreclosure suit, but after the filing and recordation of the notice of *lis pendens*. The general rule is laid down in 9 Ency. of Pl. & Pr. 345, as follows: "A leasehold interest from the mortgagor acquired after the execution of the mortgage is subject to the rights of the mortgage, and such lessee acquires nothing against him. Indeed, the foreclosure proceedings terminate the lease, and it is therefore not necessary to bring the 'essee into the suit as a party in order to cut off his interest." It is likewise there held that "The assignee of a subsequent lease is not a necessary defendant in the foreclosure of a mortgage covering the demised premises." I shall not undertake to deal with the exceptions to this general rule, real or apparent, which does not seem to be called for in the instant case, but content myself with referring to the discussion and the authorities collected in notes 2 and 3 on page 347 of the work last cited above. See also McDermitt v. Burke, 16 Cal. 580. Even if I concede that the appellant occupied the position of a tenant of the mortgagor, with all the rights and privileges of a tenant, which would perhaps be going too far, I do not see how that would avail. I might further concede the correctness of the following rule laid down in 27 Cyc. 1580: "A tenant in possession of the mortgaged premises under the mortgagor is a proper party to the foreclosure proceedings, in order that his possession may be controlled by the decree, and even a necessary party, in the sense that his rights will not be affected if he is not joined." Even so, this could not avail the appellant, for the reason that it does not appear that the appellant was in possession of the mortgaged land at the time that the bill was filed, but rather the contrary is shown. The Circuit Judge would seem to have been fully warranted

in finding from the proofs adduced that the appellant entered into such possession *pendente lite,* after the filing and recordation of the statutory *lis pendens notice.* I do not see that the case of Peninsular Naval Stores Co. v. Cox, 57 Fla. 505, 49 South. Rep. 191, which has been cited to us by each of the parties litigant, throws any special light upon the question. I have already pointed out that the facts in the instant case clearly differentiate it from Cole v. Lee, 57 Fla. 387, 49 South. Rep. 1017. I do not think that the appellant has made a litigable showing of a claim of ownership adversary to. that of the appellee, as was held to have been done by the party in possession of the premises against whom a writ of assistance was sought in Urlan v. Ruhe, 73 Neb. 807, 103 N. W. Rep. 670; 104 N. W. Rep. 1053. I am of the opinion that, upon the showing made, the appellant must be held not to have been a necessary party defendant in the foreclosure suit.

It is further contended by the appellant that it cannot be held to be bound or concluded by the decree rendered in the foreclosure suit because such decree contained the following language: "And it is further ordered that the defendants and all persons claiming by, through or under them since the commencement of this suit, be forever barred and foreclosed from all equity of redemption and claim of, in and to said mortgaged property or any part thereof." To this contention I cannot agree, though the language used in the decree might well have been broader and more comprehensive.

It has not been shown, nor do I think that it could be, that the appellant has or had the right to redeem, since, strictly speaking and using the work redeem in its technical sense, the right to redeem does not exist in this State. As I understand them, the authorities which

hold that the lessee is a necessary part defendant in a foreclosure proceeding base such holding upon the fact that the lessee has the right to redeem. Even so, such authorities are in the minority, the weight of authority being otherwise. See 9. Ency. of Pl. & Pr. 348, and the authorities cited in the notes. In my opinion, if this is true, it would follow that the appellant was and is bound by the decree. As the appellant is shown to have entered into the possession of the land after the filing of the bill for foreclosure, it seems to me that, upon the authority of Brown v. Marzyck, 19 Fla. 840, the writ of assistance was properly granted against it. I would also refer to Strong v. Smith, 68 N. J. Eq. 686, 60 Atl. Rep. 66, 63 Atl. Rep. 493, and Batterman v. Albright 122, N. Y. 484, 25 N. E. Rep 856, which would seem to support my views. I think that the decree appealed from should be affirmed.