## Richmond.

## REYNOLDS, RECEIVER, V. ALEXANDRIA MOTOR BUS LINE, INC., AND OTHERS.

### January 15, 1925.

1. CARRIERS—*Motor Vehicle Carriers—Certificate of Right—Review of Order Denying Certificate.*—An order of the Corporation Commission denying the application for a "certificate of right," if final and valid, is not reviewable either by the State Corporation Commission or by the Supreme Court of Appeals after the expiration of six months from the date when made.

2. CORPORATION COMMISSION—*Jurisdiction—Validity of Orders.*—An order of the Corporation Commission is not valid unless the Commission has jurisdiction to make it, and exercise it in a manner allowed by law.

3. CARRIERS—*Motor Vehicle Carriers—Application for Certificate as of Right—Notice.*—Neither the statute (Acts 1923, page 195) nor the rules of the Corporation Commission require that an applicant "as of right" for a certificate of "public convenience and necessity" should give notice to any one of his intention to apply for a certificate, and no such notice is necessary.

4. CARRIERS—*Motor Vehicle Carriers—Certificate as of Right—Intent of Statute.*—Under Acts of 1923, page 195, an applicant for a certificate of public convenience and necessity, as a matter of right, was required to satisfy the Commission that he was in good faith operating on February 28, 1923, but the Commission was left free to use its own methods of obtaining this satisfaction. He belonged to a favored class, and the legislature manifestly intended to give him a decided advantage over other applicants. He had invested his time and capital in an effort to serve the "public necessity and convenience" and the legislature plainly intended to protect him in the enjoyment of his investment.

5. CORPORATION COMMISSION—*Contents of Records—Preliminary Matters.*— Constitution of 1902, section 155, requires the State Corporation Commission to keep a permanent record "of all its judgments, rules, orders, findings and decisions," and that at least two of the Commission are required to constitute a quorum. The record should show whatever is necessary for the protection of the rights of third persons, but there

are many preliminary conferences and negotiations between the commission and applicants for some assistance or relief, requiring no notice to third persons, which may never result in any determinate action by the commission. These it would be impracticable and inadvisable to record, and are not within the meaning of the Constitution.

6. CARRIERS—*Motor Vehicle Carriers—Proof of Grant of Certificate—Case at Bar.*—In the instant case, an appeal from an order of the Corporation Commission, while no permanent record was vouched, it was twice stated in the opinion of the Commission, made a part of the record in the case, that the application of defendant in error for a certificate of right to operate a motor bus line between Alexandria and Washington was granted on June 27, 1923.

   *Held:* That this statement, under the circumstances, must be accepted as true by the Supreme Court of Appeals.

7. CARRIERS—*Motor Vehicle Carriers—Order Granting Certificate as of Right— Financial Condition of Applicant—Effect and Finality of Order.*—On June 27, 1923, a certificate of right to operate a motor bus was granted defendant in error by the Corporation Commission and the applicant was advised by the Commission that that certificate would be issued upon the return by it of a properly verified financial statement. This order was an adjudication by the Commission that the applicant had complied with the statute entitling him to a certificate "as of right," and that this certificate would be issued upon compliance with the rules of the Commission. But this was the greatest effect that could be given the order. No certificate was issued, and none could be issued until the conditions named were complied with. The case was not finally disposed of by the Commission.

8. CARRIERS—*Motor Vehicle Carriers—Order Granting Certificate as of Right—Certificate Never Issued—Revocation of Order—Notice and Opportunity to be Heard—Case at Bar.*—On June 27, 1923, the Corporation Commission entered an order granting defendant in error a certificate as of right to operate a motor bus line between Alexandria and Washington, and notified the applicant that the certificate would issue upon the return by it of a properly verified financial statement. This statement was never received by the Commission, and on July 7, 1923, the Commission, without notice to defendant in error and without any hearing, entered an order denying the application, as it appeared to the Commission that the applicant had ceased operations on June 30, 1923.

   *Held:* That the case was still pending; that the Commission had jurisdiction of the subject matter and of the parties, and that the validity of the order made on July 7, 1923, could only be called in question on the ground that, for some reason, it was void, and that it was not void on the ground that the order of June 27, 1923, could only be set

aside after notice to the applicant and an opportunity afforded him to be heard.

9. Carriers—*Motor Vehicle Carriers—Notice and Opportunity to be Heard—When Certificate has been Granted.*—The certificate required by the statute can only be issued after the applicant has complied with the requirements of the statute, and "the proper orders" of the Commission. When it has been *actually issued*, the application is no longer a pending case before the commission, and the applicant is no longer charged with notice of any action taken by the Commission. He is no longer in court, and, if any further action is to be taken, he is entitled to notice and an opportunity to be heard.

10. Summons and Process—*Notice of Further Proceedings—Litigant Presumed to be Present at Every Stage of the Litigation.*—In a pending case, in legal contemplation, every litigant, properly before the court, is personally present at every stage of the litigation from the time he voluntarily comes into court, or is brought in by process, until the litigation is ended, and is not entitled to any further notice of the proceedings. If every litigant were entitled to an additional notice every time any order was to be asked affecting his interest, litigation would never end, and the business of the courts would be paralyzed.

11. Corporation Commission—*Sessions not Strictly Terms of Court—Changes in Orders and Judgments.*—The powers and duties of the Commission being of such a varied nature, it cannot be held down to the strict rules applicable to courts of record with regard to the time in which changes may be made in its orders. Its times for holding public sessions are not strictly terms of court. In courts of record, the record remains in the breast of the court during the term at which an order is made or a judgment rendered, and the court may, during the term, without notice to the parties, change any order made or judgment rendered at a previous day of the term.

12. Corporation Commission—*Change in Orders and Judgments made at Previous Session—Case at Bar.*—In the instant case it was unnecessary to consider the extent of the powers of the Commission to change an order made at a previous public session, or to enter *nunc pro tunc* orders, as the orders in question were made at the same term.

13. Rehearing—*Not a Common law Right.*—The right to a rehearing of a final judgment is not a common law right, and exists only by virtue of statute.

14. Carriers—*Motor Vehicle Carriers—Denying Certificate—Review.*—The only remedy for review of the denial by the State Corporation Commission of the application for a certificate of public convenience as of right, under Acts 1923, page 195, is by appeal to the Supreme Court of Appeals within the time prescribed by section 3734 of the Code of 1919. The right to a rehearing by the Commission is not granted by the statute. There may be cases subject to the continued supervisory control and direction of the Commission, notwithstanding they are no

longer pending cases before the Commission, or where the inherent nature of the subject is such as to imply a right to reopen the case, or rehear a former adjudication, but this plainly is not one of them.

15. CARRIERS—*Motor Vehicle Carriers—Right to Demand a Certificate "as of Right"—Time of Application.*—The legislature never intended that the right to demand a certificate "as of right" should be perpetual. On the contrary, the act expressly provided that "no motor vehicle carrier shall *hereafter* operate" without having first obtained the certificate by the act.

16. CARRIERS—*Motor Vehicle Carriers—Certificate as of Right—Abandoned Service.*—The statute (Acts 1923, page 195) contemplated that the service existing on February 28, 1923, should be continued up to the time the application was made for a certificate of public convenience and necessity as of right was made. It was not intended to revive a service that had been abandoned.

17. CARRIERS—*Motor Vehicle Carriers—Notice and Opportunity to be Heard.*—Section 3 of the Act of 1923, page 195, requiring a hearing after notice and an opportunity to be heard, has no application to an order stating that upon the filing of a properly verified financial statement a certificate would be issued. It applies only to certificates actually issued, not to orders directing or promising a certificate on conditions never complied with.

Appeal from an order of the State Corporation Commission.

*Reversed.*

The opinion states the case.

*J. K. M. Norton, John S. Barbour* and *Gardner L. Boothe*, for the appellant.

*J. R. Tucker* and *H. Noel Garner*, for the appellees.

BURKS, J., delivered the opinion of the court.

This case is here on an appeal of right from the State Corporation Commission. Commissioner Shewmake delivered the opinion of the Commission, which is

made a part of the record of that tribunal.  In it the facts are stated as follows:

"Chapter 161 of the Acts of 1923, which was approved April 3, 1923, became effective sixty days after the adjournment of the special session of the General Assembly, to-wit, June 27, 1923.  Prior to the effective date of the act, the Commission was without power or jurisdiction to hear or determine the rights of motor carriers to receive certificate under the act, but anticipating the congestion and confusion which would result upon the act becoming effective, it notified all known motor vehicle carriers operating in the State to file their applications for certificates and to appear before the Commission on June 27, 1923, the effective date of the act, at which time hearings would be had to determine the propriety of issuing certificates upon such applications.

"On the date aforesaid a very large number of the carriers appeared, and in those cases wherein it appeared that the carrier was operating on February 28, 1923, and hence was entitled under the terms of the act to a certificate of right and also in cases where no opposition to the grant of the certificate developed, certificates were granted by the Commission as of that date. Contested cases were set down for subsequent hearing.

"Under date of June 18, 1923, Alexandria Motor Bus Company filed, in conformity with rule 15 of the commission's rules and regulations, its application for a certificate of right, permitting its operation as a motor vehicle carrier between the city of Alexandria, Virginia, and the city of Washington, D. C.  It is not disputed by the complainant that the Alexandria Motor Bus Line was in operation on February 28, and was entitled, as of right, to a certificate of convenience and necessity.

"The Alexandria Motor Bus Line was not represented at the hearing of June 27, 1923, but at said hearing, its application was considered and it appearing that the company was entitled to a certificate of right, the same was granted by the Commission as of that date as appears from the letter of Commissioner Forward under date of June 28, 1923, in which he advised the applicant: 'Your application for a certificate was granted at yesterday's hearing and the certificate will be issued upon the return by you, properly verified, of your financial statement.'

"The act of 1923 required that every motor vehicle carrier when granted a certificate should file with the Commission liability and property damage insurance or a surety bond, except in the case of operators having net surplus assets of $10,000.00 who were relieved from such obligation and permitted in effect to carry their own insurance. The Alexandria Motor Bus Line had filed with the Commission with its application a financial statement to show that it possessed the requisite net surplus assets and planned to carry its own insurance. This financial statement, however, was not verified by affidavit as required and was returned by the Commission for the sole purpose of having this omitted detail supplied.

"At this time the operations of the Alexandria Motor Bus Line were directed by L. W. Selph, as general manager of the company, but for some reasons the Commission's letter of June 28th was not delivered to him. It apparently was received by Mr. Noel Garner, an officer of the company; by him turned over to a Dr. Outcault, whose connection with the company is not disclosed, and by the latter delivered to the company's office sometime subsequent to July 1st.

"On the night of June 30, 1923, the Alexandria

Motor Bus Line suspended operations. This suspension of operations is explained by Mr. Selph, the general manager of the company, as having been due to the advice of his personal attorney to the effect if the carrier continued its operations subsequent to the effective date of the act without the permit of the Commission the company was liable to fine and the officers also personally liable to prescribed penalties; that having received notice of the grant of the certificate (contained in Major Forward's undelivered letter of June 28th) he determined to, and did, suspend operations on the night of June 30th.

"It is true that at the Commission's hearing on June 27th it was announced that by reason of the confusion and congestion incident to putting into effect the new law, it was not the purpose of the Commission to immediately impose penalties for continued operation without a permit in the case of carriers operating *bona fide* at the time the law became effective, and that such carriers might continue to operate for a reasonable time thereafter without a formal permit. It is also true, however, that the Alexandria Motor Bus Line was not represented at the hearing and had no knowledge of this ruling.

"On or about July 1, 1923, Commissioner Forward directed Mr. Burton Marye to proceed to Alexandria and report on the motor bus situation and affecting the lines of Alexandria Motor Bus and the Reo Bus Line. Mr. Marye went to Alexandria where he was informed that the Alexandria Motor Bus Line had ceased operations and that its buses had been removed from the State, which information was reported to Major Forward verbally upon his return to Richmond. On July 7th, without any notice to the Alexandria Motor Bus Line and without any hearing upon the matter, the

Commission entered its order reciting that the Alexandria Motor Bus Line having applied to the Commission for a certificate of right, 'and it appearing to the Commission that said applicant had ceased operations as of June 30, 1923.

" 'It is ordered, That this application be, and the same is hereby, denied.'

"A copy of this order was sent and received at a time and by some representative of the company, not disclosed by the evidence.

"Operations were, of course, not resumed after the entry of the order of July 7th, and the matter stood *in statu quo* until February, 1924. Sometime during that month a conference was had between Mr. Selph, Mr. May and the Commission, with reference to the possibility of securing a revocation of the order of July 7, 1923, and a rehearing of the application of the Alexandria Motor Bus Company for a certificate of right and at said conference it was stated to the Commission that it was the purpose of the parties to secure such certificate in the name of the Alexandria Motor Bus Line and, if granted, to have an immediate assignment of such certificate by the Alexandria Motor Bus Line to Robert Lee May. The plan was tentatively approved by the Commission in this preliminary conference.

"Under date of February 26, 1924, Alexandria Motor Bus Line filed its application with the Commission praying a revocation of the Commission's order of July 7th, and the issuance to the petitioner of a certificate of right in accordance with the prayer of its original application filed June 18, 1923. On this petition an *ex parte* hearing was had without notice to the complainant, or to any other person, and on February 27, 1924, a formal order was entered by the Commission revoking and setting aside its order of July 7, 1925, and

granting to the Alexandria Motor Bus Line a certificate of right for the operation of its vehicles as a motor vehicle between the cities of Alexandria, Virginia, and Washington, D. C.

"Immediately upon the entry of the Commission's order of February 27, 1924, there was filed with the Commission an assignment from Alexandria Motor Bus Line to Robert Lee May, executed under proper authority of the board of directors of the company, assigning and transferring to the said May all of its right, interest and benefits in and to the certificate above mentioned, together with a petition of the said May praying the approval of the Commission of said transfer and assignment and an allowance of a period of seventy-five days within which he should be permitted to commence operations.

"Whereupon a certificate was issued by the Commission under said date to the said May by virtue of the assignment and transfer aforesaid authorizing him to carry on the business of a motor vehicle carrier between the cities of Alexandria, Virginia, and Washington, D. C., under the terms and conditions therein stated. On March 24, 1924, the plaintiff filed its petition praying that the permit thus issued to Robert Lee May should be revoked and the said May and the Alexandria Motor Bus Line be enjoined and prohibited from operating or attempting to operate under either of the permits above mentioned issued by the Commission on February 27, 1924.

"On April 17, 1924, a public hearing was had in the court room of the Commission at which time and place the Commission heard the testimony of witnesses and received documentary evidence in support of the contentions of the respective parties and subsequent to that hearing briefs were filed by counsel for the peti-

tioner and the respondents. On August 11, 1924, the Commission entered its order denying the petition of Arthur L. Reynolds, receiver of Washington-Virginia Railway Company."

[1, 2] It is insisted by the appellant that the order of the Commission of July 7, 1923, was a final order, and that whether properly entered or not, after January 7, 1924, it was not reviewable either by the State Corporation Commission or by this court. If the order was valid and was final then the position of the appellant is correct. Code section 3734. The order, however, was not valid unless the Commission had jurisdiction to make it and exercised it in a manner allowed by law.

Section 3 of the act of 1923* forbade any motor vehicle carrier from using the improved highways of the State without first having obtained from the Commission a certificate of "public convenience and necessity." It then provided how this "public convenience and necessity" was to be ascertained. If the applicant was actually operating in good faith over the proposed route on February 28, 1923, then he was entitled to the certificate "as a matter of right." As soon as this fact was made to appear to the satisfaction of the Commission, the applicant was entitled to his

---

* "No motor vehicle carrier shall hereafter operate for the transportation of persons or property for compensation on an improved public highway without first having obtained from the Commission, under the provisions of this act, a certificate declaring that the public convenience and necessity require such operation; but a certificate shall be granted as a matter of right when it appears to the satisfaction of the commission that such person, firm or corporation was actually operating in good faith, over the route for which such certificate shall be sought, on the twenty-eighth day of February, nineteen hundred and twenty-three. The commission shall have power to grant a certificate after hearing when the applicant requests a certificate to operate in a territory already served by a certificateholder under this act, or any other common carrier, when the public convenience and necessity in such territory are not being reasonably served by some other certificateholder or other common carrier, provided, that the existence of a railroad or other motor vehicle carrire in the territory sought to be served by such applicant shall not be sufficient cause for a refusal

certificate upon the terms prescribed by the rules of the Commission. It was wholly immaterial what service was being furnished by other carriers. If, however, he was not so operating on February 28, 1923, and desired to operate in a territory already served by a certificateholder under the act, or some other common carrier, then the Commission could only grant a certificate *after a hearing.* If there were no other carrier in the territory, the certificate could be granted "with or without a hearing."

[3, 4] The act was approved April 3, 1923, but did not go into effect until June 27, 1923. Acts 1923, page 195, chapter 161. In anticipation of this effective date, motor carriers filed their application for certificates with the Commission prior to June 27, 1923. The Alexandria Motor Bus Line, Incorporated, filed its application June 18, 1923, asking for a certificate "as a matter of right," alleging that it was in good faith operating over the proposed line on February 28, 1923. Neither the statute nor the rules of the Commission required that an applicant "as of right" should give notice to anyone of his intention to apply for a certificate, and no such notice was necessary. The applicant was required to satisfy the Commission that he

to grant him a certificate, but may be considered by the Commission as constituting good cause for limiting the number of vehicles which such applicant may operate on the route mentioned in his application. In all other cases, with or without hearing, the Commission may issue said certificate as prayed for; or for good cause may refuse to issue the same, or may issue it for the partial exercise only of the privilege sought. The Commission may, at any time, by its order, duly entered after a hearing had upon notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard, at which it shall be proved that such holder has wilfully violated or refused to observe the laws of this State touching motor vehicle carriers, or any of the terms of his certificate, or any of the Commission's proper orders, rules or regulations, suspend, revoke, alter or amend any certificate issued under the provisions of this act, but the holder of such certificate shall have the right of appeal to the Supreme Court of Appeals as in other cases of appeals from the Commission, provided, however, that a certificate when once granted by the Commission shall not be thereafter suspended, revoked, altered or amended for any other cause than hereinabove stated."

was in good faith operating on February 28, 1923, but the Commission was left free to use its own methods of obtaining this satisfaction. He belonged to a favored class and the legislature manifestly intended to give him a decided advantage over other applicants. He had invested his time and capital in an effort to serve the "public necessity and convenience" and the legislature plainly intended to protect him in the enjoyment of his investment. *Gruber* v. *Commonwealth,* 140 Va. 312, 125 S. E. 427.

[5] It is true that the Constitution (section 155) requires the Commission to keep a permanent record "of all its judgments, rules, orders, findings and decisions" and that at least two of the Commission are required to constitute a quorum. But the duties of the Commission are multitudinous, involving the exercise of legislative, executive and judicial powers. There are numerous enquiries to be answered, complaints to be investigated, conferences with parties to be held, adjustments to be made and an almost infinite detail of business to be conducted, so that in many instances it would be impracticable to make the permanent records show more than the ultimate results after all preliminary matters had been disposed of. The record, of course, should show whatever is necessary for the protection of the rights of third persons, but there are many preliminary conferences and negotiations between the Commission and applicants for some assistance or relief, requiring no notice to third persons, which may never result in any determinate action by the Commission. These it would be impracticable and inadvisable to record, and are not within the meaning of the Constitution.

[6, 8] While no permanent record is vouched in the instant case, it is twice stated in the opinion of the

Commission, by Shewmake, Commissioner, made a part of the record in this case, that the application of the Alexandria Motor Bus Line for a certificate of right to operate a motor bus line between the cities of Alexandria and Washington was granted on June 27, 1923.  This statement, under the circumstances, we must accept as true.  It cannot be doubted that, upon the facts stated, if the financial statement called for by the letter of Commissioner Forward had been furnished, and the Commission had then refused to issue the certificate, it could have been compelled to do so by mandamus.  The finding of the Commission that the application for the certificate had been granted was, unless and until reversed, conclusive of the fact that the Commission was satisfied that the applicant was in good faith operating the line on February 28, 1923, and was entitled to the certificate upon complying with the regulations as to a proper financial statement, or upon giving bond.  This order was an adjudication by the Commission that the applicant had complied with the statute entitling him to a certificate "as of right" and that this certificate would be issued upon compliance with the rules of the Commission.  But this is the greatest extent to which the order of June 27, 1923, can be carried.  It is the fullest effect that can be given to it.  No certificate was issued, and none could be issued until the conditions named were complied with.  The case was not finally disposed of by the Commission.  The making of a proper financial statement, or the giving of a proper bond were yet to be passed upon by the Commission.  Until one or the other was done no certificate would ever issue.  The granting of the application on the terms stated was not the equivalent of the issuance of a certificate.  The

8

case was still pending before the Commission on and after June 27, 1923.

In this state of the case, the Commission entered the order of July 7, 1923. Of this order, the Commission says:

"This Commission is of opinion that the order of July 7, 1923, was improvidently entered; that the appellant having been granted its certificate as shown by the letter of June 28, 1923, had a right to the same of which it could only be deprived by a formal adjudication after hearing pursuant to notice. The order of July 7, 1923, was entered arbitrarily and without notice and was, therefore, of no effect. It is true that the certificate applied for and which was granted by the Commission, as stated in the letter of June 26th, was never actually issued, but, there is a sharp distinction to be drawn between the granting of a certificate and the mere issuance of the same. After the Commission had passed upon the application of the Alexandria Motor Bus Line, Incorporated, and granted the certificate, there remained nothing to be done but this issuance, a purely ministerial act. It is conceded that the applicant was entitled to the certificate as a matter of right upon the proof produced at the hearing on June 27, 1923. That certificate, once granted, could only be revoked for some cause provided for by statute after hearing pursuant to notice."

We are unable to concur in this opinion and conclusion of the Commission. It seems clear that the case was still pending before the Commission on July 7, 1923. It then had jurisdiction of the subject matter and of the parties, and the validity of the order made on that day can only be called in question on the ground that, for some reason, it is void. This is recognized by the Commission in its opinion, and it declares the

order of July 7, 1923, void on the ground that the order of June 27, 1923, could only be set aside after notice to the applicant and an opportunity to be heard, which were not afforded him.

[9] The certificate required by the statute can only be issued after the applicant has complied with the requirements of the statute, and "the proper orders" of the Commission. When it has been *actually issued* the application is no longer a pending case before the Commission, and the applicant is no longer charged with notice of any action taken by the Commission. He is no longer in court, and if any further action is to be taken he is entitled to notice and an opportunity to be heard.

[10] In a pending case, however, in legal contemplation, every litigant, properly before the court, is personally present at every stage of the litigation from the time he voluntarily comes into court or is brought in by process, until the litigation is ended, and is not entitled to any further notice of the proceedings. If every litigant were entitled to an additional notice every time any order was to be asked affecting his interest litigation would never end, and the business of the court would be paralyzed. *Steinman* v. *Clinchfield Coal Corp.*, 121 Va. 611, 634, 93 S. E. 684.

[11, 12] The powers and duties of the Commission being of such a varied nature, it cannot be held down to the strict rules applicable to courts of record with regard to the time in which changes may be made in its orders. Its times for holding public sessions are not strictly terms of court. In courts of record, the record remains in the breast of the court during the term at which an order is made or a judgment rendered, and the court may, during the term, without notice to the parties, change any order made or judgment ren-

dered at a previous day of the term.   *Clendenning* v.
*Conrad,* 91 Va. 410, 21 S. E. 818; *Baker* v. *Swineford,*
97 Va. 112, 33 S. E. 542.   The extent of the powers
of the Commission to change an order made at one of
its previous public sessions, or to enter *nunc pro tunc*
orders need not be considered as the orders of June
27, 1923, and July 7, 1923, were made at the same
term.   In the instant case, the Commission was en-
tirely within its rights and powers in entering the order
of July 7, 1923.

[13, 14] The order of July 7, 1923, shows on its face
that it was a final disposition of the case.   It is wholly
immaterial whether it was right or wrong.   The Com-
mission had dismissed it, and no longer had any
jurisdiction over it.   The right to a rehearing of a
final judgment is not a common law right, and exists
only by virtue of statute.   18 Enc. Pl. & Pr. 65.   In
the instant case there is no such statute.   The only
remedy of the applicant was by appeal to this court of
which he did not avail himself within the time pre-
scribed by law.   Code section 3734.   There may be
cases subject to the continued supervisory control and
direction of the Commission notwithstanding they are
no longer pending cases before the Commission, or
where the inherent nature of the subject is such as to
imply a right to reopen the case, or rehear a former
adjudication, but this plainly is not one of them.

[15, 16] The legislature never intended that the right
to demand a certificate "as of right" should be per-
petual.   On the contrary, the act expressly provided
that "no motor vehicle carrier shall *hereafter* operate"
without having first obtained the certificate by the act.
*All* motor vehicle carriers were brought within the
immediate operation of the act.   No motor vehicle
carrier could operate a single day without the certifi-

cate of "public necessity and convenience." This necessitated an application for the certificate before the right became effective. The statute also contemplated that the service existing on February 28, 1923, should be continued up to the time the application was made. It was not intended to revive a service that had been abandoned.

In the instant case, the application was made in due time, but was denied by the order of July 7, 1923. It is too plain for argument that the Commission had jurisdiction at that time, for good and sufficient cause, to make an order denying the application, and if it denied such application without such cause, then it is equally plain that its order was not void, but simply erroneous. Such a judgment could only be reversed on appeal. 15 R. C. L. pages 859-61, section 334. It is equally plain that the order was a final order dismissing the case from further hearing by the Commission. To allow such a case to be reopened before the Commission after the expiration of the time in which an appeal could be taken would in effect nullify the provisions of the statute (Code section 3734) requiring appeals from final orders of the Commission to be taken and perfected within six months from the date of such order. In the instant case, the applicant apparently acquiesced in the order of July 7, 1923, dismissing its petition, and waited over seven months before it even suggested an objection. It could never have been the legislative intent to permit such conduct.

The order of June 27, 1923, treated in its most favorable light to the applicant, was simply an order stating that upon the filing of a properly verified financial statement "the certificate would be issued." It was not the issuance of a certificate, nor an unconditional order for the issue of a certificate, but a condi-

tion was annexed which was never fulfilled.   Had the condition been fulfilled a different question would have been presented.   As it is, the case remained a pending case awaiting the fulfillment of the condition. While so pending, the Commission, with full jurisdiction of the subject matter and the parties, entered the order of July 7, 1923.   However inadvertent the order may have been, however erroneous, it was not void, and could only have been set aside by an appeal to this court.   *Gray* v. *Stuart*, 33 Gratt. (74 Va.) 351; *Wilson* v. *Smith*, 22 Gratt. (63 Va.) 493; *Fox* v. *Cottage B. F. Assn.*, 81 Va. 677, 683.

[17] Section 3 of the act, requiring a hearing after notice and an opportunity to be heard, has no application to such an order as that of June 27, 1923.   It applies only to "certificates *actually issued*," not to orders directing or promising a certificate on conditions never complied with.

It follows from what has been said that the order of July 7, 1923, is still in force and effective, and that the Corporation Commission was without jurisdiction to enter the order of February 27, 1924, hereinbefore referred to.

Of course the Commission has jurisdiction to hear a new application and to determine it in favor of the applicant if the facts justify granting the certificate.

The record contains much evidence tending to show the insolvency of the applicant and an abandonment of the service after June 30, 1923, but it has not been deemed necessary to enter upon a discussion of that feature of the case.

This conclusion renders unnecessary the consideration of the other assignments of error.

The order of the State Corporation Commission of February 27, 1924, setting aside and annulling its order

of July 7, 1923, made on the application of the Alexandria Motor Bus Line, Incorporated, and granting to the latter company a certificate of public convenience and necessity as a matter of right, and also issuing to Robert Lee May, as assignee of the Alexandria Motor Bus Line, Incorporated, a certificate of public necessity and convenience, will be set aside and annulled and a judgment will be entered in this court in favor of the appellant against the appellees for his costs.

*Reversed.*