NORTHERN PAC. RY. CO. et al. v. BOARD OF RAILROAD COM'RS OF MONTANA et al.

No. 1507.

District Court, D. Montana, Helena Division.

Dec. 30, 1935.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., for plaintiffs.

Raymond T. Nagle, Atty. Gen., A. H. Angstman, of Helena, Mont., and John G. Skinner, of Red Lodge, Mont., for defendants.

Before GARRECHT, ' Circuit Judge, and CUSHMAN and PRAY, District Judges.

PRAY, District Judge.

This is a suit in equity seeking injunctive relief. A restraining order was issued against the defendants. The case was submitted to a statutory court of three judges sitting at Helena. The facts can be briefly stated. On October 5, 1934, the plaintiff railway company applied to the Board of Railroad Commissioners of the state of Montana for authority to discontinue its passenger train service on its branch line extending from Laurel to Red Lodge, Montana. The plaintiff transport company at the same time applied to said board for authority to operate busses and trucks as a common carrier of passengers and freight on the public highway between Billings and Red Lodge; the change in service sought was to become effective in the event both applications were granted. At a hearing before the board held October 5, 1934, witnesses appeared in behalf of and against the applications. On December 31, 1934, orders were made by a quorum of the board, consisting of Commissioners Young and Stout, granting both applications and requiring the bus and truck service to be inaugurated not later than March 1, 1935. When Commissioner Stout's term of office expired on January 7, 1935, he was succeeded by Commissioner Jerry J. O'Connell. A petition for rehearing of the two applications above was filed with the board on January 11, 1935, and a copy thereof served upon attorneys for the plaintiffs. An answer was filed to this petition by plaintiffs, without waiving objection to the board's jurisdiction theretofore made, and on February 28, 1935, the board, by a quorum vote, granted a rehearing and rescinded the orders granting the applications of December 31, 1934. This actio⁙ of the board is alleged by the plaintiffs to have been taken without authority or jurisdiction. Counsel for both sides agree that the real question for determination is, Did the board have a right to grant a rehearing? There seems to be no dispute as to the jurisdictional allegations of the complaint in respect to citizenship and amount involved. The petition for rehearing before the board, objections and answer thereto were filed by the board and copies thereof made a part of the answer herein.

Paragraphs XI and XI½ are admitted and show that the transport company complied with the requirements of the orders of the board and with chapter 184 of the Laws Mont.1931, and with the rules and regulations of said board. The fees required to be paid by section 16 of said chapter 184 were paid on or about January 9, 1935. The bond required by section

13 of said chapter was filed on January 12, 1935, and no objections have been made thereto. It appears that the transport company expended large sums of money in the purchase of motor vehicles and equipment, in printing tickets and tariffs, and in employing drivers and mechanics; made provision for carrying the mails and handling express business. In accordance with the order, 20 days' notice was given the public of the discontinuance of passenger train service and the commencement on March 1, 1935, of motor carrier service, and that operation of such motor carrier service was actually begun on the last-named date, and that a driver in charge of a truck was arrested, and that Commissioners O'Connell and Carey, as a quorum of said board, and the defendant Attorney General, threaten to and will, unless enjoined from so doing, commence and prosecute actions against said railway company to enforce the penalties provided by statute, unless the passenger train service is continued as required by the order of February 28, 1935, and will also commence and prosecute actions against the transport company for operating motor vehicles between Billings and Red Lodge. The foregoing is believed to be a substantial statement of the material facts as outlined by the plaintiffs, somewhat abbreviated. The defendants' counsel admit that in the main they have no quarrel with the statement of the case as made by counsel for plaintiffs, but they add that the petition for rehearing was filed with the board on January 11, 1935, and that it was not until the next day, January 12, 1935, that plaintiffs filed with the board the bond or policy of insurance referred to in the amendment to the complaint, paragraph XI, and so the claim is here made by the defendants that, at the time when the transport company first became entitled to a certificate of public convenience and necessity, under any view of the case, there was then pending before the board a petition for rehearing, and further that affirmative allegations of the answer were admitted to be true, and only their relevancy, materiality, and redundancy were questioned by the motion to strike. Defendants further state that Equity Rule 31, 28 U.S.C.A. following section 723, has no application here. The defendants assert that perhaps the most important allegation in the answer with which they are concerned is that the certificate aforesaid never has been issued by the board, authorizing the operation of the transport company, unless the orders granting the applications of plaintiffs are tantamount to a certificate. Plaintiffs assert that said orders of December 31, 1934, were equivalent to the actual issuance of a certificate. To narrow the question as submitted further, Did the new board have the right to receive and act upon the application for rehearing at the time it was presented, and, further, were such orders equivalent to the certificate required by law? The orders of December 31, 1934, provided in part: "It is ordered that the application of the Northern Pacific Transport Company in docket No. 1774, for a certificate of public convenience and necessity authorizing the transportation of persons and property by motor vehicle over the public highways between Billings and Red Lodge, Montana, i. e. U. S. Highways Nos. 10, 310 and 32, shall be, and the same is hereby granted, subject to a full compliance with the rules and regulations of the Board and to the following express conditions and limitations, towit. * * * It is further ordered that the application of Northern Pacific Railway Company in Docket No. 1775 for permission to discontinue its rail passenger service on its Rocky Fork Branch between Laurel and Red Lodge and the rail passenger service between Billings and Laurel rendered in connection with service to the Rocky Fork Branch, shall be, and the same is hereby granted, upon 20 days notice to the public and upon the inauguration of the Motor Carrier passenger service hereinabove authorized." It was also provided in the above order that the service therein authorized should be commenced not later than March 1, 1935.

Did the board have the right to entertain the petition for rehearing filed on January 11, 1935? A copy of the petition was served upon attorneys for plaintiffs, and they answered, opposing it, and submitted a brief. On the following day, January 12th, they filed the bond required by law. It is a fact, however, beyond dispute that, at the time the petition for a rehearing was filed with the board and copy thereof served upon counsel, the principal condition set forth in the board's order of December 31, 1934, had not been fulfilled; that condition related to furnishing a bond before the certificate of public necessity and convenience could issue. Considerable discussion has occurred over the case of Reynolds v. Alex-

andria Motor Bus Line, 141 Va. 213, 126 S.E. 201, decided by the Supreme Court of Appeals of Virginia, and claimed by both sides as an authority on the question of a rehearing by a board or commission similar to that of the defendant herein. According to that authority, the granting of such an application, or the making of such an order as we have here, was not the equivalent of the issuance of a certificate of public convenience and necessity. The court held there that the bus line was entitled to a certificate upon complying with the regulations in respect to the filing of the required financial statement, or upon furnishing a bond. The order there provided that the certificate would be issued upon complying with the rules of the commission. The court in that case (141 Va. 213, 126 S.E. 201, at page 205), held: "No certificate was issued, and none could be issued until the conditions named were complied with. The case was not finally disposed of by the Commission. The making of a proper financial statement, or the giving of a proper bond were yet to be passed upon by the Commission. Until one or the other was done no certificate would ever issue. The granting of the application on the terms stated was not the equivalent of the issuance of a certificate. The case was still pending before the Commission on and after June 27, 1923." The commission there in question had previously (141 Va. 213, 126 S.E. 201, at page 205) held: "It is true that the certificate applied for, and which was granted by the Commission, was stated in the letter of June 28th, was never actually issued, but there is a sharp distinction to be drawn between the granting of a certificate and the mere issuance of the same. After the Commission had passed upon the application of the Alexandria Motor Bus Line, Inc., and granted the certificate, there remained nothing to be done but this issuance, a purely ministerial act."

The Supreme Court of Virginia disagreed with the commission, and held that the case was still pending before it on July 7, 1923, when its order was made denying the application of June 18, 1923, whereon a hearing had been held on June 27, 1923, and an order made by the commission granting the bus line's application for a certificate and providing therein that it would be issued upon furnishing a financial statement. The order of July 7, 1923, was made on information received by the commission that the bus line had ceased operations on June 30, 1923. On February 26, 1924, the bus line applied to the commission to set aside its order of July 7, 1923, and issue a certificate, which was done on February 27, 1924. Plaintiff Reynolds then made application to set aside the order of February 27, 1924, which was denied by the commission. The Supreme Court again referred to the opinion of the commission, which held that the order of July 7th was void for the reason that the order of June 27th, could only be set aside after notice to the applicant and an opportunity to be heard, which were not afforded. "The certificate required by the statute," said the Supreme Court (141 Va. 213, 126 S.E. 201, at page 205), "can only be issued after the applicant has complied with the requirements of the statute, and 'the proper orders' of the Commission. When it has been actually issued, the application is no longer a pending case before the Commission, and the applicant is no longer charged with notice of any action taken by the Commission. He is no longer in court, and, if any further action is to be taken, he is entitled to notice and an opportunity to be heard." On the authority here cited defendants contend that in a pending case the board can order a rehearing and that a case is pending until a certificate is issued, and that consequently the board in the present case had the right to entertain the petition for rehearing and grant it before a certificate was issued. See, also, the case of Pennsylvania R. Co. v. Public Commission of Ohio, 123 Ohio St. 203, 174 N.E. 737. To conform with the Session Laws Mont.1931, c. 184, §§ 8 (a), 10 (a), 11, and 12, no question is made but that a carrier, before he is permitted to operate, must obtain from the board a certificate of public convenience and necessity, and a policy or other security must be furnished, as required, by the order of the board, before such certificate can be issued. See, also, section 13. A rehearing may be granted where it appears that other material evidence was available and should have been considered before making the order.

It has been recognized that the general rule is:

"A party to a proceeding before a public utility commission may apply to the commission for a rehearing of the cause, either in its entirety or as to one or more of the matters determined, for the purpose of giving the commission an oppor-

tunity to rectify any mistake made by it, and under some statutes application for a rehearing is a condition precedent to a judicial review of the order of the commission. Whether or not a rehearing should be granted is a matter within the discretion of the commission, provided such discretion is not abused, but it should ordinarily not be allowed unless the commission doubts the correctness of its former conclusion or new evidence is offered upon a material issue. More than one rehearing may be allowed by the commission if deemed necessary.

"Time. Unless otherwise provided by statute, application for a rehearing by the commission must be made within a reasonable time after the order or decision complained of becomes effective." 51 Corpus Juris, 68, 69.

The following authorities relied upon by defendants would seem to indicate that the calling in of a new member would not prevent the commission as then constituted from entertaining a petition for rehearing in a proper case: In re Atchison, Topeka & S. F. R. Co., P.U.R.1918a, 843; Somers v. Midland T. & Ry. Co., P.U.R. 1925C, 406; Equitable Trust Co. v. Hamilton, 226 N.Y. 241, 123 N.E. 380; People v. Public Service Commission, 130 App. ·Div. 335, 114 N.Y.S. 636.

Section 7 of chapter 184 of the 1931 Session Laws of Montana provides that the Board of Railroad Commissioners, after hearing had, upon reasonable notice to the holder of any certificate or privilege thereunder, at which it shall appear that the holder violates or refuses to observe any of the board's orders or any provision of the act, suspend or revoke any certificate or privilege issued under the provisions of the act, "but the holder of any such certificate or privilege shall have all the rights of rehearing and review, as to such order of the board, as is provided in this Act."

The court's attention has not been called to any further provision in chapter 184 relating to a rehearing nor to any provision of the laws of Montana to which reference is made in chapter 184 so relating, nor to any decision of the Supreme Court of the state of Montana construing that part of section 7 relating to a rehearing.

Section 12 of chapter 184 provides that a certificate once issued shall continue in force until terminated by the board for cause, as in the act provided, or until terminated by the owner's failure to comply with section 13 of the act.

Section 14 provides that, in so far as applicable, the provisions of the statutes as to procedure before the board, in cases involving the service of railroads in the state, including the conduct of hearings, shall apply.

In Fulmer v. Board of Railroad Commissioners, 96 Mont. 22, 28 P.(2d) 849, at page 855, the Supreme Court of the state of Montana, in a suit involving the provisions of chapter 184, said: "The function of the court in these matters should not be minimized. Without some supervision, efficiency would often be sacrificed to expediency, and administration would be lacking in uniformity and equity. It is a fundamental fact that great enterprises, both governmental and private, must proceed regularly and impartially. They will seldom do so automatically. While this court cannot function for the board, it can require that it proceed in reasonable accord with statutory requirements and established principles of practice."

▆ In view of the foregoing, we are not convinced that an intent upon the part of the Legislature to deny the board authority to grant a rehearing under the stated circumstances is sufficiently shown to justify us in anticipating a ruling by the state court to that effect, nor are we convinced that the second order of the board, rescinding the order granting the one plaintiff a certificate of convenience and necessity and permitting a discontinuance by the other plaintiff of its rail passenger service, amounts to more than a stay order until the conclusion of the rehearing ordered.

▆ It has not been made clear to the court that there was any stipulation or understanding between counsel that the allegations of the answer were admitted; it does not so appear from the record of the hearing nor in the files of the case. In the absence of such an agreement, there seems to be no reason why Equity Rule No. 31 should not apply except as to those allegations in respect to the petition for rehearing and what was done about it.

In view of the foregoing, it appears that the plaintiffs should not prevail in their suit, and that the motion of defendants to dismiss it should be granted, and it is so ordered.

All concur.